[Crim. No. 15295. In Bank. July 12, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
JUDITH KRIVDA et al., Defendants and Respondents.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Daniel L. Lieberman, Deputy District Attorneys, for Plaintiff and Appellant.

Sam Bubrick for Defendants and Respondents.

## OPINION

**BURKE, J.**—The question presented by this appeal is whether a householder who places contraband in trash barrels and subsequently places the barrels adjacent to the street for pickup by the rubbish collector may be deemed to have abandoned the trash at that location and to have forsaken any reasonable expectation of privacy with respect thereto.

The pertinent facts leading to defendants' arrest are as follows: On July 1, 1968, Officer Gates received a telephone call from an anonymous informant who told him that "Roger," "Judy" and "Frankie," residing at 1901 Nolden, Los Angeles, were engaged in sex and narcotic activities and were injecting Judy's two children with methedrine. Thereafter Officers Gates and Marsden located the premises, a single family dwelling, observed two young female children in front, and ran a utility check which showed that Judy Krivda paid the utilities there. Investigation also showed that Edward Krivda, whose wife was named Judy, had previously been arrested for narcotic activity. About 11 a.m. on July 19, 1968, the officers returned to the address and saw several trash barrels in front on the parkway adjacent to the sidewalk; they also observed the refuse collectors approaching and stopped them about half a block west, identified themselves and requested them to empty the well of their trash truck and pick up the trash in the cans in front of 1901 Nolden.

The officers watched the men empty the well of their truck, drive to the front of the premises and empty the trash barrels; one block north the officers examined the contents of the well and found five paper sacks containing miscellaneous marijuana debris and marijuana seeds. One sack also contained four to six partially burned marijuana cigarettes, an envelope bearing the words "Edward Krivda, 1901 Nolden," a white, lined piece of paper on which was a handwritten letter with the name "Frankie" mentioned in it dated Saturday, 13th, signed by "Al," and a three by five card dated Wednesday, 6-26, bearing the names "Roger" and "Judy." The officers took a position of vantage and watched the premises; they observed defendant Roger Minor come out of the house at that address, pick up the trash barrels and carry them to the front porch of the house. They then approached the premises, effected entry, discovered defendants in the residence and recovered additional marijuana and paraphernalia.

On September 18, 1968, defendants were charged by information with possession of marijuana (Health & Saf. Code, § 11530). Thereafter, trial was continued because of the pendency on appeal of *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], decided by this court on September 24, 1969. On October 24, 1969, the superior court

heard and denied defendants' motion to suppress evidence (Pen. Code, § 1538.5). On December 12, when the case was called for trial setting, defendants moved to "reopen" the ruling on their motion to suppress. The court granted the motion to reopen, took the matter under submission on the basis of the transcript and evidence previously admitted at the prior hearing, and granted the motion to suppress. Then, on its own motion, the court ordered the action dismissed (Pen. Code, § 1385). The People appeal from the order of dismissal (Pen. Code, § 1238, subd. (a)(7)).

We have concluded that the court had no jurisdiction to entertain defendants' renewed motion to suppress, once its order denying the prior motion had become final as to that court, since the sole and exclusive remedy prior to conviction to review the denial of a motion to suppress is by means of an extraordinary writ of mandate or prohibition pursuant to Penal Code section 1538.5, subdivision (i). However, we have also concluded that the People's appeal from the order of dismissal should be denied, since the evidence which was sought to be supressed was obtained by means of an unlawful search and seizure and constitutes the only evidence sufficient to sustain a conviction against either defendant.

The People first contend that the trial court had no jurisdiction to entertain defendants' renewed motion to suppress. That contention finds support in the language of section 1538.5, subdivision (i),[1] which permits the defendant to make a motion to suppress (or to renew a prior motion denied at the preliminary hearing) at a special de novo hearing in superior court prior to trial, and which further provides that "After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing."

As we pointed out in *People* v. *Superior Court* *(Edmonds)* 4 Cal. 3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202], one of the purposes underlying the enactment of section 1538.5 was to reduce the unnecessary waste of judicial time and effort involved in rehearing and redetermining

---

[1]Section 1538.5, subdivision (i), provides as follows: "If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure which shall be heard prior to trial and at least 10 days after notice to the people unless the people are willing to waive a portion of this time. The defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing. After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing."

at various stages in a criminal proceeding the same search and seizure questions. Accordingly, in that case we reaffirmed the principle set forth in *People* v. *O'Brien,* 71 Cal.2d 394, 403 [78 Cal.Rptr. 202, 79 Cal.Rptr. 313, 456 P.2d 969], that the superior court has no jurisdiction to entertain *at trial* a renewed motion to suppress previously denied at a special hearing in that court. ■ By similar reasoning, we conclude that the superior court is without jurisdiction to entertain such a renewed motion prior to trial, following the expiration of the 30-day period within which to seek extraordinary relief. As stated in *People* v. *Superior Court (Green)* 10 Cal. App.3d 477, 480-481 [89 Cal.Rptr. 223], "Had the Legislature intended to allow before trial the trial court's review, by way of rehearing, of a ruling on a pretrial motion made in the trial court it would have so provided. Construction of section 1538.5 to permit such a rehearing would doubtless result in repeated and endless hearings on each of which the same search and seizure issue would be raised before successive judges until one granted the motion. This may or may not amount to forum shopping but such practice would fail to comport with justice, encourage trial delays impairing the right of both parties to a speedy trial and do violence to the original purpose of section 1538.5, Penal Code—to streamline our criminal court processes, cut down the number of times a defendant can raise the search and seizure issue prior to conviction and provide an orderly system for litigating the validity of a search and seizure. Under the statute a defendant is entitled to make only one pretrial motion to suppress evidence in the superior court and if it is denied his only remedy is, within 30 days, to seek a writ of mandate or prohibition from this court; if he is unsuccessful and the evidence sought to be suppressed is used against him resulting in conviction he may further pursue his remedy by appeal from the judgment upon which further review of the validity of the search or seizure may be had. [Citation.] He is not entitled to a second hearing on the motion prior to trial."

Defendants point out that in the instant case, their renewed motion was presented in the form of a motion to "reopen" to the same judge who had previously denied it. Defendants urge us to hold that under such circumstances the judge had jurisdiction to reconsider and correct his own prior ruling on defendants' motion to suppress. It is true that there are several cases which hold that a court has the inherent power to reconsider, and thereupon to modify, revoke or set aside, a prior order upon determining that its order was erroneous. (See *People* v. *Eggers,* 30 Cal.2d 676, 692 [185 P.2d 1]; *Imperial Beverage Co.* v. *Superior Court,* 24 Cal.2d 627, 634 [150 P.2d 881]; *Harth* v. *Ten Eyck,* 16 Cal.2d 829, 832-834 [108 P.2d 675]; *San Francisco Lathing, Inc.* v. *Superior Court,* 271 Cal.App.2d 78, 81 [76 Cal.Rptr. 304]; *Big Bear Mun. Water Dist.* v. *Superior Court,* 269 Cal.App.2d 919, 928 [75 Cal.Rptr. 580]; 2 Witkin, Cal. Procedure

(1954), Proceedings Without Trial, § 12, p. 1649.) It has been suggested, however, that the foregoing rule is limited in its application to mere "procedural" rulings which may be modified at any time before final judgment (see *Greene* v. *Superior Court,* 55 Cal.2d 403, 405 [10 Cal.Rptr. 817, 359 P.2d 249]; *City of San Diego* v. *Superior Court,* 36 Cal.2d 483, 486 [224 P.2d 685]), and is an exception to the general rule that judicial error which occurs in the rendition of orders or judgments which are the fault of judicial discretion, as opposed to clerical error or inadvertence, may not be corrected except by statutory procedure (see *In re Candelario,* 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729]; *Minardi* v. *Collopy,* 49 Cal.2d 348, 352-353 [316 P.2d 952]; *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184, 191-196 [222 P.2d 867] [dissenting opn. of Traynor, J.]).

Without attempting to reconcile these various cases,[2] or to determine whether motions to suppress may be characterized as "procedural" only,[3] it seems apparent from the language of subdivision (i) of section 1538.5 that the Legislature, in order to reduce the time spent in relitigating search and seizure questions, intended that the court's order denying a motion to suppress should, in the absence of a timely request for extraordinary appellate relief, become final 30 days thereafter and not subject to further review until an appeal is taken following trial. Otherwise considerable judicial time could be expended in rehearing and redetermining matters which had already been fully litigated, thereby possibly delaying the trial of the case.

However, until the 30-day period has expired and the order has become final, the court should have the inherent power, prior to trial, to reconsider and "reopen" its prior ruling.[4] The 30-day limitation on reconsideration should minimize the likelihood of substantial delay of trial, and should enable the judge to review his ruling while the facts underlying the motion and the law applicable thereto are still fresh in mind. Of course, successive applications based upon the same factual showing should be discouraged, and ordinarily the court should refuse to consider a renewed motion supported by substantially the same facts as the one denied, but until its order has become final the court should have jurisdiction to reconsider

---

[2]A recent article examines some of the cases in this area and finds them largely unreconcilable. See Goodman, *The Power of the Trial Judge to Change a Prior Ruling on a Motion* (1970) 45 State Bar. J. 483.

[3]A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as finder of fact. (*People* v. *West,* 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) Accordingly, an order made following the hearing is arguably more in the nature of a judgment after trial than an ordinary ruling on a procedural matter during the course of a trial.

[4]See *People* v. *Leighter,* 15 Cal.App.3d 389, 393-395 [93 Cal.Rptr. 136], upholding the trial court's jurisdiction to reconsider its ruling on a prior motion to suppress made within the 30-day period and prior to commencement of trial.

it. (See *Imperial Beverage Co.* v. *Superior Court, supra,* 24 Cal.2d 627, 634; *Big Bear Mun. Water Dist.* v. *Superior Court, supra,* 269 Cal.App.2d 919, 928; *Josephson* v. *Superior Court,* 219 Cal.App.2d 354, 359 [33 Cal.Rptr. 196].)

In the instant case, defendants failed to request reconsideration of the court's order denying their motion to suppress until after the 30-day period under subdivision (i) had expired. Accordingly, the trial court should not have entertained their renewed motion, and its order granting the same was beyond its jurisdiction and void. Nevertheless, both parties have briefed and argued the merits of defendants' motion, and we are prepared to rule upon it at this time rather than to reverse and remand the case for trial, for we have concluded that defendants' original motion to suppress should have been granted. Since the People have conceded that there is no additional evidence against defendants, it is apparent that the People's appeal from the order of dismissal must be denied.[5]

The People contend that the search of defendants' trash barrels and the seizure of their contents were reasonable. They point out that the barrels were located near the sidewalk on public property, that neither the officers nor trash collectors committed a trespass in seizing and examining the contents of the barrels, and that under the facts in this case defendants may be deemed to have abandoned their trash and to have forsaken any reasonable expectation of privacy with respect thereto.

A number of cases in upholding searches in open fields or grounds around a house have stated their conclusions in terms of whether the place was a "constitutionally protected area," (see, e.g., cases cited in *People* v. *Edwards, supra,* 71 Cal.2d 1096). That phrase, however, does not afford a solution to every case involving a claim of an illegal search and seizure (see *Katz* v. *United States,* 389 U.S. 347, 350-352 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507]), and we have held that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental instrusion (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1104-1105).

---

[5] In *People* v. *Superior Court (Edmonds) supra,* 4 Cal.3d 605, 611, involving similar procedural issues, we decided not to reach the merits of the defendant's motion to suppress. In that case, the void order granting the renewed motion occurred after trial, but no dismissal was entered. Therefore, our refusal to consider the merits would not require the parties to undergo an unnecessary trial, as in this case. Further, unlike this case, we had no jurisdiction to reach the merits, since the matter reached us on petition for mandate, rather than on appeal. As we pointed out in *Edmonds,* mandate is proper only to review *jurisdiction,* not ordinary judicial error. (See also *People* v. *Superior Court (Howard)* 69 Cal.2d 491, 499-501 [72 Cal.Rptr. 330, 446 P.2d 138].)

The People note that *Edwards* and *Bradley* were decided subsequent to the events which led to defendants' arrest herein and urge that the principles announced in those decisions should be given only prospective effect. However, the "reasonable expectation of privacy" test adopted in *Edwards* and reaffirmed in *Bradley* represented no new constitutional principle which might call into play the various criteria (see, e.g., *Edwards, supra*, at pp. 1107-1108) used for resolving retroactivity problems. Instead, that test was put forth at least as early as *Katz* v. *United States, supra*, 389 U.S. 347, 353 [19 L.Ed.2d 576, 583], wherein the court held that "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment," and that in the absence of prior judicial authorization the search and seizure were unreasonable. (See also *People* v. *Edwards, supra*, 71 Cal.2d 1096, 1103-1104; *People* v. *Terry*, 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36].) ■ We conclude that the principles of *Edwards* and *Bradley*, to the extent they depend upon like principles in *Katz* v. *United States, supra*, may properly be applied to test the validity of the search and seizure at issue herein.

As the People point out, the facts in the instant case differ from those in *Edwards* in certain respects. In *Edwards*, the officers searched trash cans which were placed in the "open back yard area" behind defendants' residence, a few feet away from the back door. Consequently, the officers were required to trespass upon defendants' property in order to make the search. Although the foregoing facts were relevant to our determination that defendants had a reasonable expectation of privacy, they were not necessarily dispositive of that determination. ■ The fact that a search may or may not involve a trespass or other invasion of defendant's property interests is not conclusive, for "The prohibition in the [Fourth] amendment is against unreasonable searches and seizures, not trespasses." (*People* v. *Terry, supra*, 70 Cal.2d 410, 427.) ■ As stated in *Katz* v. *United States, supra*, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, *even in an area accessible to the public*, may be constitutionally protected [Citations.]" (Italics added; 389 U.S. at pp. 351-352 [19 L.Ed.2d at p. 582].)

The question remains whether defendants herein had a reasonable expectation of privacy with respect to the contents of their trash barrels. The People urge that the placement of the barrels near the sidewalk for collection constituted an abandonment of their contents. Indeed, had defendants simply cast their trash onto the sidewalk for anyone to pick over and cart

away, we would have no difficulty finding that defendants had thereby fore-saken any reasonable expectation of privacy with respect thereto.[6]

■ The placement of one's trash barrels onto the sidewalk for collection is not, however, necessarily an abandonment of one's trash to the police or general public. To the contrary, many municipalities have enacted ordinances which restrict the right to collect and haul away trash to licensed collectors, whose activities are carefully regulated. (See, e.g., Los Angeles County Ord. No. 5860. ch. IX, §§ 1611-1622, 1681-1691.) Moreover, these ordinances commonly prohibt unauthorized persons from tampering with trash containers. (*Id.*, § 1710.) The provisions of these ordinances would appear to refute the view that the contents of one's trash barrels become public property when placed on the sidewalk for collection.[7]

Aside from municipal ordinances, there may exist an additional element of expected privacy whenever one consigns his property to the trash can, to be dumped, destroyed and forgotten. As stated in *Edwards,* "The marijuana itself was not visible without 'rummaging' in the receptacle. So far as appears defendants alone resided at the house. In the light of the combined facts and circumstances it appears that defendants exhibited an expectation of privacy, and we believe that expectation was reasonable under the circumstances of the case. We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, *at least not until the trash had lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere.* Half truths leading to rumor and gossip may readily flow from an attempt to 'read' the contents of another's trash." (Italics added; *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1104.)

Similarly, in the instant case the contraband was concealed in paper sacks within the barrels, and was not visible without emptying or searching through the barrels' contents. The fact that the officers did not examine the contents until the trash had been placed into the well of the refuse truck

---

[6]Note that if defendants had in fact abandoned the contraband found in their trash barrels, the People might be unable to establish the dominion and control necessary to constitute the offense of possession with respect thereto. However, in the instant case, that contraband led to the discovery of additional marijuana and paraphernalia in defendant's apartment which could properly form the basis for a conviction.

[7]Note also that ordinances governing trash collections may require the householder to place his trash barrels at the curb along the street in front of his house, at least in the absence of other arrangements with the collectors. (*Id.*, § 1706.) Thus, defendants' placement of the barrels near the sidewalk was not necessarily indicative of any intent other than to comply with such a requirement. We would be reluctant to distinguish *Edwards* solely on the basis that the defendant in that case was permitted to place his trash barrels in his backyard for collection.

does not distinguish *Edwards,* for at no time did defendants' trash lose its "identity" by being mixed and combined with the "conglomeration" of trash previously placed in the truck. Under such circumstances, we hold that defendants had a reasonable expectation that their trash would not be rummaged through and picked over by police officers acting without a search warrant.

Of course, one must reasonably anticipate that under certain circumstances third persons may invade his privacy to some extent. It is certainly not unforeseen that trash collectors or even vagrants or children may rummage through one's trash barrels and remove some of its contents. However, as stated in *People* v. *McGrew,* 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1], "The hotel guest may reasonably expect a maid to enter his room to clean up, but absent unusual circumstances he should not be held to expect that a hotel clerk will lead the police on a search of his room."

It is also clear, as in *Edwards,* that defendants' reasonable expectation of privacy was violated by unreasonable governmental intrusion. (See *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1104-1105.) We should hesitate to encourage a practice whereby our citizens' trash cans could be made the subject of police inspection without the protection of applying for and securing a search warrant.

■ Since the marijuana found in defendants' trash barrels was the result of an illegal search and seizure, that evidence should have been ordered suppressed pursuant to Penal Code section 1538.5. The People apparently concede that the additional contraband and paraphernalia discovered in defendants' residence was the "tainted fruit of the poisonous tree" and likewise should have been ordered excluded as the product of the prior illegal search. (See *People* v. *Edwards, supra,* 71 Cal.2d 1096, 1105, and cases cited.) The People also concede that they have no further evidence against defendants. Accordingly, the action was properly dismissed under Penal Code section 1385.

The judgment of dismissal is affirmed.

Peters, J., Tobriner, J., and Mosk, J., concurred.

**WRIGHT, C. J.,** Concurring and Dissenting.—I join in the opinion of the majority that a motion to suppress illegally seized evidence, made pursuant to Penal Code section 1538.5, may not be renewed prior to trial, following expiration of the 30-day period with which to seek extraordinary relief. I do not agree, however, that the area protected by the Fourth Amendment proscription of unreasonable searches and seizures encompasses parkways immediately adjacent to public thoroughfares or pedestrian walkways or

that the police action enlisting the assistance of the authorized trash collectors in separately picking up trash placed at the curb for pickup transmuted the collection into an unreasonable seizure. Moreover, in my view, a householder has neither a reasonable expectation of privacy as to his curbside trash, nor a right to expect that his trash will be commingled with that of others before it is subject to examination, governmental or otherwise. Whatever his hope may be as to the ultimate disposition of his trash, it does not, in my view, rise to a "reasonable expectation of privacy."[1]

I do not question the proposition enunciated in *People* v. *Edwards, supra,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], that trash cans immediately adjacent to a home, in a place to which the general public is not invited, are within a "constitutionally protected area" (*Hoffa* v. *United States* (1966) 385 U.S. 293, 301 [17 L.Ed.2d 374, 381, 87 S.Ct. 408]) as to which the owner may reasonably expect privacy from governmental intrusion. That expectation, however, is inextricably bound up in the physical location of the trash cans. I cannot accept the proposition that either *Edwards* or the Constitution compels extension of protection to trash cans to those placed adjacent to or on a public thoroughfare, nor do I find any constitutional compulsion for the newly developed doctrine of "commingled trash."

The majority purport to find support for their conclusion that the police invaded defendants' reasonable expectation of privacy as to their trash container in *Katz* v. *United States, supra,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], where the court held that electronic eavesdropping on a telephonic conversation violated the defendant's privacy on which he justifiably relied. Since *Katz,* however, the court has further refined the constitutionally justifiable expectations which are protected by the Fourth Amendment. In *United States* v. *White* (1971) 401 U.S. 745 [28 L.Ed. 2d 453, 91 S.Ct. 1122], the court emphasized the continued viability of *Hoffa* v. *United States, supra,* 385 U.S. 293, and prior cases approving various means by which governmental agents or informers, using electronic equipment, record or transmit their conversations with wrongdoers who believe the conversation will remain private. If *White* and *Katz* have any applicability in areas other than electronic eavesdropping, it is in their holdings that an actual expectation of privacy based on a belief that a confederate or one believed to be a confederate will not reveal a defendant's secrets, is not a constitutionally justified expectation of privacy

---

[1]The existence of an ordinance prohibiting tampering with trash containers by unauthorized persons in no way affects this conclusion. Ordinances such as this are typically enacted to protect the exclusive right of a city or its authorized agent to collect the trash. (See 7 McQuillan, Municipal Corporations, p. 96, § 24.251, and cases cited therein.)

protected by the Fourth Amendment. In *White* the court explained: "Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubts he has, the risk is his." (401 U.S. at p. 752 [28 L.Ed.2d at p. 459].) Surely the defendant who discards his trash and places it at the curb to be picked up must also assume the risk that the collector of the rubbish may be an agent of the police or may permit the police to examine the unconglomerated trash once it is picked up. A "constitutionally justifiable expectation of privacy" need not extend to the well of a trash truck.

We need not adopt the position of the Second Circuit that trash placed at curbside for pickup may be characterized as "abandoned" (*U.S.* v. *Dzialak* (2d Cir. 1971) 441 F.2d 212 [9 Crim. L. 2046]) since, whether intended to be abandoned solely to the authorized collector or not, it is neither in a constitutionally protected area nor the subject of a constitutionally justifiable expectation of privacy.

I would reverse the judgment.

McComb, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied August 16, 1971. Wright, C. J., McComb, J., and Sullivan, J., were of the opinion that the petition should be granted.