**UNITED STATES of America,
Plaintiff,**

v.

**Lewis HARRUFF and Richard Los,
Defendants.**

**Crim. A. No. 46976.**

United States District Court,
E. D. Michigan, S. D.

Oct. 16, 1972.

William C. Ibershof, Detroit, Mich., for plaintiff.

Neil H. Fink, Richard M. Lustig, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Defendants herein have brought motions to suppress certain evidence and have agreed to have the questions decided on the briefs. The court, having thoroughly studied the matters presented, finds as follows.

I. Did the Search of the Premises at 4629 Thorncroft in Royal Oak, Michigan, Violate Defendant Richard Los' Fourth Amendment Rights and Did the Affidavit Upon Which the Warrants For Both the Thorncroft and Monte Vista Locations Were Based Lack Probable Cause Due to "Stale" Information?

██ Under the Federal Rules of Criminal Procedure, Rule 41(c), a search warrant cannot issue unless probable cause is shown. Stale information cannot be considered as constituting probable cause. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

██ The question then to be decided is whether the information before the court is indeed stale. In making that determination the courts do not rely on an arbitrary rule, but look to the facts of each case. United States v. Bosch, 209 F.Supp. 15 (D.C., 1962); United States v. Nichols, 89 F.Supp. 953 (D.C., 1950) and Rupinski v. United States, 4 F.2d 17 (6 Cir., 1925). Lapse of time alone will not negate probable cause, but it will cause a court to look into the question. The court, in so doing, must look to the affidavit as a whole and not at isolated parts. *Nichols,* supra.

██ Eleven days elapsed between the last transaction sworn to in the affidavit and the search (forty-six days since the first transaction).

If the court finds that the affidavit contains information supporting a belief that defendant is engaged in a continuing enterprise rather than a "one-shot" operation, there is probable cause to believe that the activity sworn to in the affidavit is still going on some time later. *Nichols,* supra.

Looking at the entire affidavit, this court finds such a continuing enterprise in existence. There were a series of transactions over a period of time, and defendants were acquiring supplies and chemicals apparently for a continuing operation. The large amounts involved and the fact that the supplies were "refurbished" after defendants had allegedly been in operation for some time leads this court to the conclusion that such activities could reasonably have been believed to be still going on eleven days later.

██ The next question is whether the Thorncroft address was legally the subject of a search warrant on the evidence presented. Courts have found no probable cause to search a second premises when the defendant goes from one place (observed to be a gambling operation) to another with "bulging pockets" when all that was known was the suspicious behavior of the defendant. United States v. Johnson, 113 F.Supp. 359 (D.C., 1955) and United States v. Hall, 126 F.Supp. 620 (D.C., 1955). However these are distinguishable from the instant case in that here the government has brought, in the affidavit, sufficient factual content to establish probable cause as to the Thorncroft residence. Chemicals were observed by agents to be delivered there, as in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

Thus, this court finds there was probable cause to issue the search warrants for both the Monte Vista and Thorncroft locations.

II. Whether it Was a Violation of Defendants' Rights Under the Fourth Amendment to Search the Garbage Container For the Formula Used Allegedly by Defendants.

■ Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) established that "persons and not things" are protected by the Fourth Amendment. Basically, where a thing is does not determine the question; rather it is the intent of the person that is determinative for if the actor's intention is to abandon a piece of property, its location would not matter. The court said it might be abandoned in a private place or private in a public place.

In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), a defendant paid for his room and vacated the premises, after which a federal officer, with the manager's consent, entered and retrieved evidence from a wastebasket. The court held that 1) the exclusive right to possession was at that time in the manager because the guest had checked out and thus the search was with the consent of the person in control, and 2) the evidence was in the wastebasket and was therefore abandoned.

This does not mean that anything in a wastebasket is abandoned. But since the room was abandoned, there was good reason to believe the evidence was abandoned too. The court looked for indications of intent and found them in the abandonment of the room. Thus this court must also look to the facts to determine the intent.

■ People v. Krivda, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971) holds that one does not abandon what one leaves in one's own wastebasket— the theory being that one still intends to keep the prying eyes of one's neighbors away. Yet these were wastebaskets for a private home, placed near the house. In the instant case the photographs stipulated to in this case indicate these garbage containers were of the type used by the entire apartment complex—community pick-up containers placed at the curb. Thus *Krivda,* supra, is easily distinguished because under *Katz,* supra, if one has reason to be aware of public scrutiny the court cannot infer a desire to maintain privacy. In this case the receptacle searched was a large public community trash container located on the curb and used by all residents of the complex. Since this was a community trash receptacle the court cannot find that defendant intended to keep it private and thus the search thereof was not unlawful.

III. Whether the Actions of the Agents in Participating in a Controlled Delivery of the Chemicals Necessary For the Manufacture of a Controlled Substance Constitutes Entrapment.

The controlled delivery was performed by a BNDD agent posing as a delivery messenger. The controlled substance in question here was MDA. BNDD agents knew of the order for the chemicals and allowed it to go through.

■ When the government furnishes a contraband item to defendants a case for entrapment is made out. United States v. Bueno, 447 F.2d 903 (5 Cir.. 1971) and United States v. Dillet, 265 F.Supp. 980 (D.C., 1966). Yet clearly, by admissions of both the defendant and the government, the chemicals involved here were not themselves contraband.

■ Entrapment must also be shown by the government's setting in motion or initiating the activity. Clearly, defendants did that all by themselves by ordering the chemicals. Thus even if the chemicals were contraband they could not come within the rule of the cases. *Bueno,* supra, and *Dillet,* supra.

Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1962) also sets out this test. The government was estopped only when it manufactured the crime and the defendant is otherwise innocent. It is obvious that defendants here had their own intent and set the wheels in motion themselves. Only then did the government become involved, and then only to the extent that they allowed the defendants to carry through what they had started.

This court finds that defendants' motion to suppress evidence must be denied in all parts.

So ordered.