[Crim. No. 27394. Second Dist., Div. Five. June 17, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
SUE COHEN, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., Shunji Asari and Nancy A. Saggese, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant, Sue Cohen, was charged with grand theft in taking property—books—worth more than $200 from the Los Angeles County Library.[1] She was convicted by a jury and placed on five years' probation on condition that she spend seven months in jail.

### FACTS

Stated briefly, defendant, using one of three library cards, checked out a substantial number of books from the county library. None of the books was returned; many of them were sold by defendant to a used book store after she had obliterated the identifying marks on the books. Defendant admitted these facts, but claimed that she sold the library books because she needed the money and had planned to replace them with identical books.

Facts will be added in discussing defendant's contentions.

### DISCUSSION

#### 1. *Motion to Suppress Evidence*

The chief investigator for the Los Angeles City Public Library received a call from the Hollywood branch library that defendant was taking out books and selling them to a book store in Hollywood. The investigator learned from library records that defendant had checked out books, worth in excess of $500, and that she had five library cards, all

---

[1] A second count involving the Los Angeles City Library was dismissed on defendant's motion, which the People conceded should be granted.

variations of either Sue or Ann Cohen. An F.B.I. agent told the investigator that he had information that defendant was taking library books and selling them to book stores.

When the investigator went to defendant's motel, she would not allow him to enter. The motel manager told the investigator that he had seen defendant coming and going from the motel on many occasions carrying books and that the maid, while cleaning defendant's room, had seen evidence of the books being mutilated.

The investigator then contacted a Los Angeles police officer and told him about defendant's activities. The police officer verified the investigator's information. He also went to defendant's motel and spoke to the manager and the maid. The manager showed the officer a check from the Atlantis Book Store with which the defendant had paid her rent. The maid told the officer that whenever she cleaned defendant's room, she noticed many library books there; had seen ink eradicator and sandpaper on the desk and found bookcovers and bits of paper with the words "Los Angeles Public Library" in the wastepaper basket and on the floor. The officer then asked the maid to save any such items which she found in the wastepaper basket.

The maid thereafter saved any "library" items that she found in defendant's trash. These materials were turned over to the police, and eventually used against defendant.

■ Defendant's contention that the maid's search of her trash, at the request of the police, constituted an unlawful search is without merit. The facts set forth above make clear that at the time the police officer instructed the maid to collect defendant's "library" trash, he had ample probable cause to search that trash. Thus the search was lawful. (*People* v. *Parker*, 44 Cal.App.3d 222, 229-231 [118 Cal.Rptr. 523].) ■ Defendant's reliance on *People* v. *Krivda*, 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], is misplaced. *Krivda* held, in substance, that an individual has a reasonable expectation that his trash will not be searched.[2] However, the prohibition against violating the privacy of one's trash does not apply where the police have probable cause to support the search. (*People* v. *Dumas*, 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208].)

[2]The Supreme Court has granted a hearing in a case which held, relying on *Krivda* and distinguishing *Parker*, that a search without probable cause of a trash can was unlawful. (*People* v. *Smith*, Crim. No. 19170.)

## 2. *Unlawful Entry*

Based upon the information set forth above and the evidence obtained from the maid at the hotel, two police officers went to arrest defendant at her new address, an apartment hotel in Hollywood.[3] An officer talked to the hotel manager and asked her if defendant was still living there. The manager said that she thought defendant was living there, but that defendant had not paid her rent for several days. The officer told her that they intended to take defendant into custody and asked the manager if she had a key to the door so that in the event that they had to force their way in, they could use her key rather than break down the door. The manager said that she did, and the officer asked the manager to accompany the police to the room.

The officer told the manager that they would have to wait for defendant to respond before they entered. They could not just open the door and barge in on her. The manager said, "Well, maybe you're restricted that way, but she hasn't paid her rent. I can go in." The manager knocked on defendant's door several times and called her by name. There was no response.

The manager put the key in the lock and started to push the door in. A voice from within said, "Yes? Who is it?" As the door swung open, the officer looked into the room from the hall and saw defendant. He said to her, "I'm Sergeant Wrinkle from the Los Angeles Police, and I have a warrant for your arrest." Defendant said, "May I see it?" The officer entered the apartment and showed defendant the arrest warrant and his identification. (*Ante,* fn. 3.) He told her that she was under arrest. The officer could see, in plain view, library books, including several volumes previously identified by a librarian as books that defendant had taken out and not returned. A further search of the apartment was conducted with defendant's consent.

Defendant's contention that the entry was unlawful because the officer did not comply with Penal Code section 844 is without merit. The evidence concerning the conversation between the officer and the motel manager is certainly not without conflict; however, on the facts as set forth above, and in contrast to *People* v. *Keogh,* 46 Cal.App.3d 919, 926-927 [120 Cal.Rptr. 817], the officer asked the manager not to open the door. Moreover, the manager had an independent right to enter

---

[3]The officer testified that he obtained an arrest warrant. Since the warrant was not produced at the section 1538.5 hearing, we shall assume—as the trial court did—that the entry and arrest were made based only on probable cause only.

defendant's room based on their relationship, whether or not the exercise of that right also aided the police. (*People* v. *Minervini*, 20 Cal.App.3d 832, 839-840 [98 Cal.Rptr. 107].) ▮ Thus, the arrest of defendant and the seizure of whatever evidence was found in connection with the arrest was not unlawful for failure to comply with section 844.[4]

### 3. *Lesser or Specific Offense*

Defendant, as noted, was charged under Penal Code section 487, subdivision 1. The information states that defendant "did willfully, unlawfully and feloniously take the property of Los Angeles County Library . . ." Defendant contends, first, that her demurrer to the complaint should have been sustained on the theory that section 28802 of the Education Code prohibits the precise conduct involved and therefore section 487 did not apply, and, alternatively, that the jury should have been instructed, as requested by defendant, that the offense set forth in section 28802, was a lesser and necessarily included offense under Penal Code section 487. Neither contention has merit.

▮ The rule is that a special statute does not supplant a general statute unless *all* the requirements of the general statute are covered in the special statute. (*People* v. *Lustman*, 13 Cal.App.3d 278, 286-287 [91 Cal.Rptr. 548].)

Education Code section 28802 reads: "Any person who willfully detains any book . . . belonging to any public or incorporated library . . . for 30 days after notice in writing to return the article or property, given after the expiration of the time for which by the rules of the institution the article or property may be kept, is guilty of a misdemeanor."

Section 28802 requires neither a nonconsensual taking nor the intent to deprive the owner of his property permanently, while grand theft under the Penal Code requires, inter alia, both that the taking be nonconsensual and that the person who takes the property intend to deprive the owner of that property permanently. (*People* v. *Walther*, 263 Cal.App.2d 310, 316 [69 Cal.Rptr. 434].) The trial court properly found that defendant's demurrer was not well taken.

---

[4]The purposes of the knock-notice statute are to protect the privacy of the individual to be arrested, to protect innocent persons who may also be present, to prevent situations which are conducive to violent confrontations, and to protect the police. (*People* v. *Peterson*, 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187].) Where, as here, it is the manager who, having identified herself, opens the door presumably with the acquiescence of the person inside, and the police officer identifies himself before entering the room, the purposes of section 844 are fully satisfied. (*People* v. *Peterson*, *supra*, at pp. 723-724.)

■ Defendant's alternative contention that section 28802 is a lesser included offense within the charged offense is also without merit. A lesser and necessarily included offense is either an offense within the offense specifically charged in the accusatory pleading or an offense which, as defined by statute, is necessarily committed when the greater offense is committed. (*People* v. *St. Martin,* 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390].) First, and most obviously, grand theft is not limited to books and other educational material, although in this particular case that happens to be what defendant stole.

Second, section 28802, as noted above, requires that the borrower be notified in writing to return the article or property and fail to do so for at least 30 days thereafter.

The trial court did not err in refusing to instruct the jury under Education Code section 28802.

### 4. *Substitution of Counsel*

Defendant was held to answer in July 1974, at which time she was represented by privately retained counsel. On October 10, 1974, her attorney made a motion to withdraw as counsel of record. The reasons he gave were that defendant did not want to follow his advice; that there had been disputes between them; and that there were certain things she wanted done which he did not believe proper to do. Defendant stated that her attorney felt she "should plea bargain or plead guilty . . . and I'm not guilty." After some discussion concerning defendant's desire that her attorney make 995 and 1538.5 motions, which her attorney concluded did not have merit, and defendant's statement that she did not want to get another attorney, the trial court denied counsel's motion to be relieved, without prejudice.

The attorney renewed the motion again on November 14. He stated that there was a total lack of communication between him and defendant and that the "relationship is so strained at this time there is no way I can defend this client adequately, . . ." Defendant asserted that the attorney had not returned her phone calls. He insisted that she had not phoned. Again the attorney stated that the relationship was so strained that he could not adequately defend defendant. The court agreed: "I don't think you are going to get proper representation from this attorney. Do you have money or property to employ an attorney?" When defendant said she did not, the court relieved her retained counsel and appointed the public defender.

■ Defendant's contention that she was deprived of the right to counsel of her choice is without merit. She recognizes the rule that the granting or denying of an application of any attorney to withdraw, lies within the discretion of the trial court (e.g., *People* v. *Prince,* 268 Cal.App.2d 398, 406 [74 Cal.Rptr. 197]), and that an attorney, having undertaken the defense in a criminal case may be released for good cause shown.

The trial court was not required to accept defendant's version of the events. The apparent total breakdown in the relationship between defendant and her attorney provided adequate grounds for the trial court to relieve that attorney. (See *Heple* v. *Kluge,* 104 Cal.App.2d 461, 462 [231 P.2d 505].)

5. *Other Contentions*

■ ■ Appellate counsel, at defendant's request, contends that a computer printout showing books loaned to defendant was not a proper business record and should not have been allowed in evidence, and that some books introduced into evidence were not overdue from the library, and therefore, there was not sufficient evidence of an intent to permanently deprive the library of those books. Neither contention has merit.

CONCLUSION

The judgment (order granting probation) is affirmed.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied July 6, 1976.