**UNITED STATES of America, Plaintiff,**

v.

**Thomas Leonard SHELBY, Defendant.**

**No. 76–CR–200.**

United States District Court,
E. D. Wisconsin.

May 12, 1977.

William E. Callahan, Jr., Asst. U. S. Atty. Milwaukee, Wis, for plaintiff.

Matthew J. Flynn, Quarles & Brady, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Defendant Shelby is charged with bank larceny. He has moved to suppress two separate confessions and evidence obtained from three separate searches. An evidentiary hearing on the motion was held in this Court February 18, 1977, and both the defendant and the government have filed briefs supporting their positions. The two confessions are opposed by defendant on the ground that they were not voluntary. One of the confessions was given to FBI Agent Beaudean on October 1, 1976, after Beaudean and other agents and officers had searched defendant's home pursuant to a search warrant. Defendant asserts that this confession was obtained by impermissibly coercive statements by Beaudean.

The other confession was given to Lieutenant Polsen of the Greendale Police Department on October 6, 1976. The confession took place at the station, after Polsen called defendant by telephone to ask him to come down to the station. Defendant challenges this confession on two grounds: first, that defendant was not adequately advised of his constitutional rights before interrogation and second, that this confession was a fruit of the earlier alleged involuntary confession to Agent Beaudean.

Of the three searches which defendant challenges, the first in time was a search of defendant's trash on September 30, 1976. The search was performed by sanitation workers, requested by police to segregate particular items found in defendant's trash. Defendant challenges this search on the ground that it was performed without a search warrant.

Defendant also opposes the search of his home pursuant to a search warrant on October 1, 1976, on the ground that there was no probable cause for the issuance of the warrant. This challenge depends primarily upon whether the evidence seized in the earlier search of defendant's trash should be held admissible.

Finally, defendant challenges the search of his automobile on October 1, 1976. The basis of this challenge is that the waiver signed by defendant to permit this search was obtained through the same coercive statements by Agent Beaudean that defendant asserts make his first confession inadmissible.

## DISCUSSION

### The Search of the Trash

The trash search is the first event in time challenged by defendant. Some of the defendant's other challenges will depend, at least in part, on the success of this particu-

lar challenge. Previous decisions involving searches of trash without a warrant have turned on the issue of "abandonment." For example, in *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), evidence appropriated by police from a wastebasket in a motel room formerly occupied by the defendant was held admissible because the defendant had thrown away, and therefore "abandoned," the articles in the wastebasket.

Since the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), some federal courts have modified the basis of the abandonment doctrine. The *Katz* decision held that the validity of a search under the fourth amendment should turn on whether "reasonable expectations of privacy" were violated by the search. In *United States v. Mustone*, 469 F.2d 970 (1st Cir. 1972), the defendant had deposited his garbage bags on the sidewalk a few doors away from his house, where they were later seized by a special agent. The court there considered the effect of *Katz* upon the abandonment doctrine and held that:

> Implicit in the concept of abandonment is a renunciation of any "reasonable" expectation of privacy in the property abandoned.

In a very similar case, *Magda v. Benson*, 536 F.2d 111 (6th Cir. 1976), the appellant had placed garbage bags in front of his residence beside the street, where one of the bags was retrieved by a postal inspector. The court rejected appellant's fourth amendment ground for suppression, holding that "no legitimate expectation of privacy exists as to abandoned property."

In two other trash search cases which have been decided since *Katz*, the expectations of privacy in the trash were held reasonable and searches were invalidated. *United States v. Kahan*, 350 F.Supp. 784 (S.D.N.Y.1972) involved the search of an office wastebasket, adjacent to defendant's desk at his place of employment. The court stated that "the undisputable expectation of an employee who discards items in his own wastebasket is that they subsequently will be disposed of and destroyed without prior inspection by others." *Id.* at 796. In *People v. Krivda*, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), *vacated*, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45, *reaffirmed*, 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457 (1973), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145, trash from a curbside rubbish container was searched after it had been dumped into a truck. The California court invalidated the warrantless search on the ground that it was defendant's reasonable expectation that the trash would be taken by authorized collectors and mixed with trash from other sources. The California court based its decision upon the fourth amendment and upon independent state grounds.

The courts in *Magda* and *Mustone* found in a very conclusory fashion that abandonment is equivalent to a relinquishment of a reasonable expectation of privacy. It does not follow logically that a defendant who throws an object into a trash can necessarily abandons any expectation that the object will not be discovered. A defendant may legitimately expect that items placed in a trash can will remain hidden. *Work v. United States*, 100 U.S.App.D.C. 237, 243 F.2d 660 (1957). Or, as stated by the courts in *Kohan* and *Krivda*, a defendant may reasonably expect that such items will either be destroyed or be irretraceably commingled with the trash of others.

It is not difficult when applying such standards as "abandonment" or "reasonable expectation of privacy" in the search and seizure area to lose sight of the policies that lie behind the exclusionary rule. The question we must ask in applying the exclusionary rule is whether we as a society share the individual's expectation of privacy and desire to protect that expectation by deterring the police from engaging in the conduct at issue. If we conclude that the expectation is so shared and that the techniques used by the police to obtain the evidence of a crime offend the privacy which we feel every individual in our society should enjoy, then we have found the expectation to be reasonable and the reme-

dy of exclusion must be afforded to that individual.

The relevant facts leading to the discovery of the evidence in the trash are as follows. The police requested the supervisor of the city sanitation employees to look for coin wrappers and coin trays in defendant's garbage. This request was conveyed to the workers who regularly picked up the defendant's trash. On the usual day and at the usual time that they customarily picked up the trash, the sanitary employees walked the short distance from their truck to defendant's back fence. They reached over the three foot fence, as was their custom, and picked up the garbage cans, which sat in a tight space between the fence and a small shed. The workers carried the cans to the truck and dumped them into the back.

As the cans were dumped, the workers heard the sound of metal clanking against the cans. Once the bags were in the truck, they ripped open some of the bags and found coin wrappers and metal coin trays. They replaced the trash cans where they had been picked up, drove around the corner, and ripped open the remainder of the bags, finding more trays and wrappers. Then the workers put the wrappers and trays into a clean bag in the truck, later put that bag into the trunk of one of their cars, and the next day turned the bag over to their supervisor, who gave the bag to the police.

At no time were the workers in any area where they were not entitled to be. They picked up defendant's trash at the same time and in the same manner as had been their custom. This periodic method of garbage collection is commonplace in our society and offends no concept of privacy. If defendant has viable objection to the admissibility of this evidence, it must be based upon the ripping open of the bags after they were in the truck. Defendant asserts that he expected those bags would not be tampered with. Although that is one expectation an individual might have with regard to his garbage, it hardly seems a common or even a rational expectation. It

is well known that children often take delight and that vagrants often find it necessary to rummage through the abandoned articles in others' garbage. It is not beyond reason that sanitation workers might from time to time look through garbage themselves, whether for their own benefit or as a favor for another. The sanitation workers in this case testified that they occasionally looked through trash, for example, to locate articles that were reported lost. The point of this discussion is that, with such common instances of trash rummaging, defendant's asserted expectation of privacy is questionable. It is not apparent that we, as a society, share such an expectation as an element of the privacy the fourth amendment is designed to protect. Nor does the Court find the techniques employed by the police in this instance offensive to society's concept of privacy.

■■■■ Even if one could agree with defendant as to his assertion of invaded expectation of privacy, one must remember that the exclusionary rule does not give a remedy to all such invasions. Because the exclusionary rule is an individual remedy for an individual violation of rights, courts have required that the objecting party show standing to challenge the search. *Mabra v. Gray*, 518 F.2d 512 (7th Cir. 1975). The doctrine of "abandonment," discussed earlier in relation to *Abel, supra*, has traditionally been defined in terms of standing to challenge an unreasonable search. The abandonment doctrine originated with *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) where the Court held that whiskey jugs, which were thrown into an open field by defendant as he ran from revenue agents, were abandoned and that defendant therefore could not challenge the seizure.

■■■ Similarly, in *United States v. Cox*, 428 F.2d 683 (7th Cir. 1970), the court held that a prisoner could not object to the appropriation by the government of his hair, which he left on the floor of the prison barber shop, because he had voluntarily abandoned the hair. The *Cox* decision makes it clear that abandonment is predom-

inantly an issue bearing upon standing to challenge a search.

In this case, defendant left his garbage to be collected. That garbage then was actually picked up and was placed in the back of the garbage truck. As in *Abel*, where the evidence was seized from a wastebasket in an abandoned hotel room; or as in *Hester*, where the evidence was obtained in an open field where defendant threw it; or as in *Cox*, where defendant left his hair on the floor of the prison barber shop, defendant in this case abandoned the coin wrappers and trays in his garbage. He intended that they would be taken away and that he would never see them again. Such intent became manifest objectively when the appointed time for collection arrived and the garbage was in fact collected. The exclusionary rule's remedy is not afforded to defendants who hold such an intent because an intent to abandon is patently inconsistent with the stake or standing that is necessary to seriously challenge a violation of an individual right.

The Court therefore denies the defendant's motion to exclude this evidence on the basis that there was no reasonable expectation of privacy in the defendant's trash under the facts of this case and on the basis of a lack of standing.

### The Search of the Home

Having decided that the evidence from the trash was validly obtained, there was adequate probable cause for the issuance of the search warrant to search defendant's home. The evidence seized pursuant to that warrant is admissible and defendant's motion with regard thereto is denied.

### The Search of the Car and the Confession to Agent Beaudean

Defendant moves to exclude the evidence obtained from his car and the confession given to Agent Beaudean October 1, 1976 on the ground that neither the waiver signed to permit the search nor the confession were given voluntarily. Testimony of Agent Beaudean at the evidentiary hearing indicates that he conducted himself properly in obtaining the confession, although Agent Beaudean admits having informed defendant of the overwhelming evidence that had already been obtained against him, and admits telling defendant later that he would not be arrested that day, it does not appear that Beaudean used these comments in any manner that could reasonably be termed as leverage or pressure in obtaining the written confession. Beaudean also inquired whether the woman seen with defendant when defendant was observed cashing in coins at a local bank was his wife. It was reasonable for Beauden to inquire whether defendant's wife, who had accompanied him to the bank on that occasion, was involved in the crime. Defendant was doubtless a little frightened at this time, as his own testimony indicates, and he may have juxtaposed all of these comments in his own mind to achieve a distorted perception of coercion. However, the fifth amendment exclusionary rule guards against police misconduct, not subjective perceptions. Since there does not appear to be any police misconduct in obtaining the confession and the waiver to search the car, both are admissible.

### The Confession to Lieutenant Polsen

Defendant asserts that the confession given by him to Lieutenant Polsen of the Greendale Police Department October 6, 1976 is inadmissible because defendant was not adequately advised of his constitutional rights prior to interrogation. The testimony of Lieutenant Polsen was that prescribed *Miranda* warnings was timely and properly given to defendant.

Even if such warning was not properly given, the facts of this case fall squarely under the recent pronouncement of the Supreme Court in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The Court there decided in a *per curiam* opinion that where a burglary suspect was invited by an officer to, and did voluntarily come down to the police station, and was not arrested or detained, but while at the station confessed to burglary, it was

not necessary that *Miranda* warnings have been given prior to the confession. The Court held that such an interrogation was not custodial and therefore did not require the safeguards developed in *Miranda*.

■ In this case, Shelby came down to the station voluntarily after being invited by Lieutenant Polsen over the phone. He was not arrested nor detained in any way at the station. A confession given under these facts does not involve the same coercive circumstances in which the *Miranda* warning was designed to operate. Therefore, the confession is admissible, irrespective of whether a timely and proper *Miranda* warning was given.

Based upon the above discussion, the motion of the defendant Shelby should be and hereby is denied in every respect.

SO ORDERED.