OPINION OF THE COURT
Edward M. Horey, J.
Under the provisions of CPL 710.20, the defendant has moved in the County Court to suppress certain evidence obtained through the execution of a search warrant issued by the County Judge of Allegany County. The County Judge has disqualified himself from passing upon the motion. The task has fallen to the temporary and specially assigned County Judge.
A hearing was held in connection with the motion on *848 September 28, 1977. It disclosed that two affidavits were submitted to the County Judge upon the application for the search warrant in issue.
The first affidavit was by an informant. It was brief. It stated: "(I) lived at Springville, NY in a trailer on Lot # 45 in the Springville Motor Court, with Randy Wing and his wife Harriet. I lived there from June 1th, 1976 until June 19th, 1976. Randy Wing told me while we were in the county jail together at Belmont that he ripped off Super Sound in Wells-ville. He said he got a large amount of stero (sic) components. He said he got in through a window. He said he had help but I cannot remember who he said helped him. While I was living in the trailer in Springville, NY, I saw in the trailer the following equipment: one quadrophonic reel to reel AKAI Tape Deck, one Pilot amplifphyer, (sic) and Pioneer Turn Table. Randy Wing told me that this stuff all came from Super Sound. End”. This affidavit bore no date.
The second affidavit was made by James McKinley, the Chief of Police of the Village of Wellsville, New York. It recited that fact and the chiefs residence in Wellsville for 15 years. It stated that the chief had checked with the Sheriffs Department of Allegany County and had ascertained that the informant had been "incarcerated with the defendant in the Allegany County jail from 6/29/76 through 7/8/76”. It recited that property had been stolen from the Super Sound Music Store in Wellsville on May 5, 1976. It stated the stolen property to be "one Fisher Quadrophonic Receiver, Serial #11477, AKAI four track/two track tape deck models #GX-530D/SS and 1730D/SS, one Stereo tape deck AKAI 4000DS”. This affidavit was dated November 9, 1976.
The hearing disclosed that the affidavit of the informant was secured by the Chief of Police on November 9, 1976. On that same date the chief completed his affidavit and made application to the County Judge for a search warrant.
The search warrant was issued on November 9, 1976, authorizing the search of a trailer of the defendant located in Springville, New York. Arrangements were made by the Chief of Police with a member of the New York State Police and a local police officer of Springville, New York, for assistance in serving the warrant. The warrant was served on November 12, 1976. No difficulty attended the service of the warrant. The defendant was present at the trailer. The stereo material described by the informant was present and in open view in *849 the living quarters of the trailer. The defendant was playing the material at the time the warrant was served.
Upon discovery of the stolen material, the defendant was arrested. He was subsequently indicted by the Grand Jury of Allegany County for the crimes of grand larceny, third degree and burglary, third degree, all in connection with the defendant’s alleged theft of stereo equipment from the Super Sound Music Store in Wellsville, New York, on May 5, 1976.
In contrast to the factual situation presented in People v Loewel (50 AD2d 483), the defendant does not raise questions of hearsay or corroboration concerning the affidavits upon which the warrant was issued. Here, the attack is limited solely to the proposition that the information contained in the affidavit of the informant suffered from staleness. The point is made that five months elapsed between the time the informant first knew of the defendant’s possession of the stolen property and the date that the information was presented to the County Judge. The passage of such time, it is urged, had dissipated any probable cause to believe that a search warrant would prove fruitful.
The present New York statute (CPL 690.30), like the Federal statute provided in act of June 15, 1917 (40 US Stat 217, 228; US Code, tit 18, former § 611 et seq.), does not impose any limitation of time on the disclosure of the information which leads to the issuance of a search warrant. The Federal statute was criticized for this deficiency by Mr. Justice McReynolds in his concurring opinion in the leading case of Sgro v United States (287 US 206, 215). "Manifestly, it is important that there should be some definite rule by which to determine when such an affidavit is important; otherwise, the matter is left at large — depending upon varying views of reasonableness”.
It was the deficiency of a fixed time period and the subjective view of reasonableness that led Justice McReynolds to a construction that the statute contained by inference a 10-day time limitation on the affidavit supporting the application as well as a 10-day time limitation on execution of the warrant which was clearly expressed in the statute. (Supra, p 216.)
The majority of the courts found no such inferentially included time limitation. A different rule was laid down by the majority of the courts. It was that: "While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the *850 proof must be of facts so closely related to the time of the issue of the warrant as to justify a ñnding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case. ” (See, opinion of the court by Justice Hughes, supra, pp 210-211; emphasis added.)
The rule quoted in Sgro v United States sets forth the basic applicable principle of law to resolve the case at bar.
The majority of decisions which have expanded on Sgro v United States in reference to the staleness of information have been in the Federal courts. Relevant to the instant case is the decision of United States v Johnson (461 F2d 285). There, the court observed that where an affidavit recites facts that have happened before the affidavit is filed and the activity is one of a protracted and continuous nature, the question is whether the violation is a continuous one. Therefore, a mere isolated violation would be more dependent upon a quick filing of an affidavit than a violation of a longer duration. Common sense, the court said, will be used to decide if probable cause still existed for the warrant to be valid.
Similarly, in United States v Harruff (352 F Supp 224), the court stressed the continuing nature of alleged criminal activities.
In United States v Guinn (454 F2d 29, cert den 407 US 911), a warrant was upheld on the strength of information nearly seven months old because the facts indicated a protracted course of criminal conduct.
This court’s review of the current decisional law leads to the conclusion that while time is relevant to the existence of probable cause in the issuance of a search warrant, there is no yardstick fixed by clock or calendar.
Whether there has been a dissipation or an evaporation of probable cause through the elapse of time depends not only upon the facts in each case, but also upon the reasonableness of the construction given those facts by the Judge who issues the warrant. (Ringel, Searches & Seizures, Arrests and Confessions [1974 Cumm Supp] § 171.06, and cases cited; Rosenblatt, The Complete Search Warrant Annotated [2d ed, Nov. 1974], pp 30-31, and cases cited.)
In the light of the legal principle involved, it serves no useful purpose to review or cite the number of days that elapsed in a particular decision. In this area of criminal law, no case has a twin. As a consequence, the many cases cited in *851 the memorandum of the defendant while informative are not decisive of the question presented.
In the instant case, the facts before the Judge issuing the warrant indicated that only part of the material stolen was present in the trailer home of the defendant. This fact suggests that the balance of the stolen equipment had been otherwise disposed. What was retained by the defendant was a stereo set, consisting of tape deck, amplifier and turn table of a type designed for household use. This stereo set was present to the view of the informant throughout the entire 12-day period in June of 1976 that the informant lived with the defendant. Thus, the defendant had retained the stereo set in his possession from May 5, 1976, the date of the commission of the crime, at least until June 19, 1976, when the informant departed, a period of approximately six weeks. Within days after the equipment was last viewed by the informant, the defendant was in jail with him. While in jail, the defendant was in no position to have disposed of it. At all times the stereo set was located in the living quarters of the defendant. These facts, together with the nature of the equipment, permit the inference that the equipment was being used by the defendant for his own pleasure.
Upon the hearing held on the motion to suppress the evidence, it was developed that at the time of the service of the warrant the stereo equipment was still present in the defendant’s trailer and was in fact being used by him at the time the warrant was served and the arrest made.
This court recognizes that subsequent events may not be used to supply an omission of facts necessary to indicate probable cause for the issuance of a search warrant. However, when facts are presented and the question of their sufficiency requires interpretation and construction of them, then, in the opinion of the court, subsequent events are relevant to, but not necessarily decisive of, the issue of whether or not the issuing Magistrate by the application of common sense to the facts and permitted inferences drawn from them, had reasonable grounds to believe that the search would be fruitful. Here, the subsequent events support the reasonableness of the view taken by the issuing Judge of the facts at hand. The stolen equipment was still present in the possession of the defendant.
Placed in the position of reviewing the legality and propriety of the issuance of a search warrant by a judicial officer, this court is the beneficiary of very definite advice and
*852 direction of approach by the Supreme Court of the United States, to wit: "Thus when a search is based upon a magistrate’s, rather than a police officer’s determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,’ ibid., and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present’ (Aguilar v Texas, 378 US 108, 111.) The cited direction of the court was later repeated and expanded, viz.:
"If the teachings of the Court’s cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be. treated and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts will tend to discourage police officers from submitting their evidence to a judicial officer before acting.”
"[T]he courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, at 270.” (United States v Ventresca, 380 US 102, 108-109.)
The court has set forth the extensive quotes from Sgro v United States and United States v Ventresca for the reason that a review of several recent State court determinations suggests that the cited direction of the Supreme Court against a hypertechnical approach, and the instruction to resolve marginal cases by the preference to be accorded warrants were either unknown or intentionally ignored.
Other cases suggest that some reviewing courts, free from the haste that typically attends the application for a search warrant and with time for contemplation, conclude upon more deliberate review that the facts presented in the affidavits did not show probable cause. That conclusion is then substituted for the conclusion of the issuing Magistrate and used as the *853 basis of overturning the warrant on a motion to suppress the evidence which the warrant produced. This substitution of judgment, the court believes, is an improper approach. The subject area is probable cause. Probable cause deals with probabilities. Probabilities "are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians act”. (Brinegar v United States, 338 US 160, 175; emphasis added.) A conclusion of a reviewing court which differs from that of the issuing Magistrate does not ipso facto make the determination of the Magistrate an unreasonable one.
In the opinion of the court, the proper test to determine whether or not a search warrant was lawfully issued is not whether the reviewing court upon independent consideration by it would have reached a conclusion contrary to that of the Magistrate, but whether the conclusion reached by the issuing Magistrate can be said to be so unreasonable under the facts that it could not have been reached by a reasonable and prudent man.
This test, the court believes, is implicit in the cited directions of the Supreme Court in United States v Ventresca (supra) and Brinegar v United States (supra). Those directions have not been overruled. They are applicable to the case at bar. This court has attempted to follow and apply them.
There is a final factor, which in the opinion of the court, weighs on the decision here. It is the timeliness in which the police officers moved on the information of the informant. On the very day that information was received, the Chief of Police prepared a supporting affidavit and sought and secured the search warrant. That fact, while not entirely decisive of the issues, was given great weight in State of Ohio v Marks (316 Ohio App 2d 114), wherein a burglar, arrested more than two months after a crime, told police of the presence of stolen property at an accomplice’s premises. The immediacy in which the police acted on the information was stressed by the court and supported the decision that the warrant had properly issued.
For all of the reasons cited, the determination of the court is that the facts before the issuing Judge reasonably justified a finding by him of probable cause that stolen material would be discovered by the execution of the search warrant.
The motion to suppress is denied.