[Crim. No. 22984. Second Dist., Div. Two. July 19, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
LAWRENCE HILBURN LITTLE, Defendant and Respondent.

## COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Plaintiff and Appellant.

Zetterberg & Zetterberg, Mark S. Kaiserman and Stephen I. Zetterberg, for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Defendant was charged in an information with violation of Health and Safety Code section 11530.5 (possession for sale of marijuana). The People appeal from an order of the Superior Court of Los Angeles County dismissing the information pursuant to Penal Code section 1385. Said dismissal followed the court's granting of a motion to suppress the People's evidence pursuant to Penal Code section 1538.5.

At the hearing on the motion to suppress, the court by stipulation, read and considered the transcript of the testimony taken at the preliminary hearing and also received additional evidence. In the final analysis, however, there is no dispute as to the facts or the credibility of the witnesses. The issue presented is purely one of law.

In the Mount Baldy area of Los Angeles County is a location known as "Mattress Flats." "Mattress Flats" is on a knoll adjacent to Mount Baldy Road, a public highway, and lies in close proximity to public rest areas which are situated along the road. No signs or fences set "Mattress Flats" apart from the surrounding area, which is remote, desolate and uninhabited. "Mattress Flats" contains a large amount of junk and tin cans indicating frequent use by a substantial number of persons.

In June 10, 1972, two deputy sheriffs in a patrol car were proceeding along Mount Baldy Road at about 2 a.m. when they observed a flash of metal as their headlights shined onto "Mattress Flats."

Deputy Ruis testified at the suppression hearing that he and other members of the Los Angeles County Sheriff's Department assigned to the San Dimas substation regularly patrol "Mattress Flats." He personally made it a practice to patrol all of the desolate areas in the district to warn persons of the hazards of being alone in such places.

Deputy Ruis had received information from other deputies regarding narcotic violations, alcoholic beverage violations and unlawful sexual activity occurring at "Mattress Flats." He had first-hand knowledge of a vehicle having in the past been abandoned there with a suicide note on the front seat. He had also on occasion found minors in possession of alcohol at that location and had asked them to leave. He believed that "Mattress Flats" was public property.

■■■■■■■

Thus when he observed the flash of metal in his headlights, Deputy Ruis proceeded to "Mattress Flats" to check for possible unlawful activity and there discovered defendant asleep on the ground near his automobile. Lying in plain sight at defendant's side was a pipe and a plastic bag containing what Deputy Ruis recognized as marijuana.

The defendant was awakened, arrested and searched. More marijuana was found in his trousers and in the trunk of the automobile. There was no warrant for arrest or search.

 At the hearing on the motion to suppress, it developed that "Mattress Flats" is in fact private property, and that defendant had written permission from the owner to be on the property. The owner had previously given written permission to the Los Angeles County Fire Department to enter the property but apparently the sheriff's office had never requested such permission and none had been given. There is no evidence, however, that the owner had ever refused permission to the sheriff nor requested that the deputies not come on the property.

The evidence was in plain sight of the officer at the time it was seized. There was no search. Thus the conduct of the officers in getting to the place from which they made the observation becomes important.

In *People* v. *Edwards,* 71 Cal.2d 1096, at page 1100 [80 Cal.Rptr. 633, 458 P.2d 713], the Supreme Court stated: "[A] number of cases involving claims of unconstitutional searches or seizures in open fields or grounds around a house have stated their conclusions in terms of whether the place was a 'constitutionally protected area.' That phrase, however, does not serve as a solution in all cases involving such claims, and we believe that an *appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion."* (Italics added.) (See also *People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Krivda,* 5 Cal.3d 357, 364 [96 Cal.Rptr. 62, 486 P.2d 1262]; *People* v. *Sirhan,* 7 Cal.3d 710, 721-742 [102 Cal.Rptr. 385, 497 P.2d 1121]; *Katz* v. *United States,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507].)

The *Edwards* test was recently further refined in *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 629 [108 Cal.Rptr. 585, 511 P.2d 33] where the Supreme Court stated that ". . . the cases recognize the distinction between the observations of a police officer who has positioned himself upon property which has been opened to public common use, and the observations of an officer who ventures onto property which has not been

so committed. A sidewalk, pathway, common entrance or similar passage-way offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner must reasonably expect him to observe all that is visible."

The defendant urges that he had exhibited a reasonable expectation of privacy in that he had received permission from the owner of the land to be there, that he knew the land was privately owned and that he had made the land his "bedroom" for that night.

None of these factors alone or in combination demonstrate a reasonable expectation of privacy.

Permission to go upon the land amounted to no more than a personal license to enter. It in no way guaranteed that other persons, whether private citizens or police, would not also enter.

The fact that defendant knew the land was privately owned at best serves only to speculatively establish what he subjectively believed were the ground rules for entry thereon. The reasonableness of an expectation of privacy based on the fact of private ownership must be judged in the light of what a reasonable person might anticipate as to how the land would appear to other persons.

Given a remote, wild-appearing area adjacent to a public highway and public rest areas, exhibiting no indicia of ownership such as the posting of signs, it could reasonably be anticipated that other persons might consider the land to be public and enter without permission. In short, unrestrained public usage would be predicted from its physical state rather than reasonable privacy from its legal condition of private ownership.

Lastly, the selection of the area as a "bedroom," rather than indicating an expectation of privacy, would, instead, lead to the conclusion that defendant placed a low premium on privacy.

*Dillon* v. *Superior Court,* 7 Cal.3d 305 [102 Cal.Rptr. 161, 497 P.2d 505], remains viable following *Lorenzana.* There a neighbor of defendant gave officers permission to use his, the neighbor's, second-story window in order to look into defendant's fenced backyard. From such vantage point the officers observed marijuana growing in defendant's yard. The court at pages 310-311 found that defendant had no reasonable expectation of privacy.

When viewed on a comparative basis, it would appear that the growing of marijuana in a fenced backyard on one's own property exhibits a greater expectation of privacy than, as is the case here, permitting it to lie unconcealed in an open field.

In *People* v. *Landry,* 276 Cal.App.2d 370 [80 Cal.Rptr. 880], two deputy sheriffs drove their patrol car onto a private dirt road which served several houses not knowing that the road was in fact private property. From a vantage point on that road they could observe the defendant through a lighted undraped window of his house. The court there upheld the validity of an arrest and search based upon the observations there made. *Landry* was not disapproved in *Lorenzana* and appears to be consonant therewith.

While *Landry* deals with the right of the officers to go on private property as well as the defendant's reasonable expectation of privacy, on the latter issue the situation in *Landry* so far overshadows defendant's claim here as to render it frivolous. (Also see *People* v. *Berutko,* 71 Cal.2d 84 [77 Cal.Rptr. 217, 453 P.2d 721].)

We turn now to a determination of whether defendant's expectation, reasonable or otherwise, was violated by unreasonable governmental intrusion.

It is well to remember that the exclusionary evidence rule was promulgated to enhance the constitutional protection against *unreasonable* search and seizure. The exclusionary rule has as its objective "to deter law enforcement officers from engaging in unconstitutional searches and seizures . . . and to relieve the courts from being compelled to participate in such illegal conduct." (*Kaplan* v. *Superior Court,* 6 Cal.3d 150, at pp. 155-156 [98 Cal.Rptr. 649, 491 P.2d 1].)

In our view, suppression of the evidence here would contribute nothing to the goals of deterring police misconduct or preserving judicial integrity. Police officers patrolling in a remote, uninhabited area cannot be expected to be familiar with the metes and bounds description or condition of the title to land adjacent to public land at least in the absence of signs, fences or other such devices that might put them on inquiry.

Case law application of the exclusionary evidence rule in the myriad of circumstances that arise has developed many sub-rules and nuances making rote and rigid invocation of the rule impossible. A balancing process is inevitably involved in which the magnitude of the officer's error is weighed against the magnitude of the intrusion on the suspect's privacy. (*People* v. *Berutko, supra.*)

As noted in *People* v. *Landry, supra,* the fact that officers used a private road as their observation point did not render their conduct unreasonable. *Lorenzana,* in discussing property which "offers an implied permission to . . . enter," necessarily suggests a test based on the reasonableness of an officer's belief as to his right to traverse the particular ground in question.

In conclusion we hold that Deputy Ruis was reasonable in his belief that his entry on the property was, if not expressly invited, at least not prohibited and thus his conduct was reasonable. The disturbance of any expectation of privacy that defendant might have subjectively entertained was de minimus.

The order appealed from is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied August 1, 1973, and respondent's petition for a hearing by the Supreme Court was denied September 6, 1973.