[Civ. No. 4332. Fifth Dist. Mar. 26, 1979.]

SKEET DEWAYNE PHELAN et al., Petitioners, v.
THE SUPERIOR COURT OF MARIPOSA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard L. McMechan for Petitioners.

No appearance for Respondent.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher, Jana L. Tuton and Gary A. Binkerd, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**FRANSON, J.—**

### STATEMENT OF THE CASE

On May 16, 1978, a complaint was filed in the Mariposa Justice Court charging petitioners Skeet Dewayne Phelan and Carol Jean Phelan with cultivating marijuana in violation of Health and Safety Code section 11358. Petitioners pled not guilty and at the preliminary hearing moved to suppress the evidence of marijuana seized on their premises (Pen. Code, § 1538.5). The motion was denied. Petitioners renewed their motion to suppress in the superior court, and after a special hearing at which the transcript of the preliminary hearing was received in evidence along with oral testimony of witnesses, the motion again was denied.

Petitioners filed with this court a petition for writ of mandate. We stayed further proceedings of the action and issued an order to show cause why the writ should not be granted.

## STATEMENT OF THE FACTS

Around May 1, 1978, Officer Wackerman of the Mariposa County Sheriff's Department received information from California Highway Patrol Officer Roger Matlock that he had received a report from an informant that a marijuana garden was located in a small ravine on the west side of the property located "straight across the road from Elliott's Corner and Chowchilla Mountain Road" in a rural area of Mariposa County. The informant had stated that the property had a new road leading into it. Wackerman went to the hall of records and obtained assessor parcel maps of the area and determined that the property on which the marijuana garden supposedly was located belonged to petitioners. The officer also determined that the property located to the west of petitioners' property belonged to Mr. Perkins. Since the parcel maps did not contain the dimensions of the property, Wackerman went back to the hall of records and obtained information concerning the acreage of the respective properties.

On May 8, 1978, Sergeant Richards of the sheriff's department also contacted Mr. Perkins and verified that his property bordered petitioners' property to the east. Richards asked Perkins for written permission to enter his property, explaining that he could not tell Perkins the true purpose of the investigation but would explain later. Perkins consented to the officers entering his property.

Later on May 8, Officer Wackerman and another officer went onto the Perkins' property for the purpose of engaging in a surveillance of petitioners' property to locate the marijuana garden. The officers walked to an area which they believed to be near the east property line of Perkins' property. They testified they spent several hours looking for the marijuana garden and also attempting to establish the precise location of the line separating petitioners' and Perkins' property. They were unable to find a corner or line marker but estimated the boundary location based on the assessor's map and Officer Wackerman's general familiarity with the land in that area. The officers finally observed what they suspected to be the marijuana garden from a vantage point atop a rocky knoll on the side of a hill above the narrow ravine in which the garden was located. The ravine and garden were to the east from where they stood and about

125 feet distant. The terrain was rocky, shrub-covered and difficult to traverse. There were no footpaths or roads in the area. The place on the hill where the officers stood was covered with large rocks and boulders.

The garden appeared to the officers to be bounded on the east side and on a part of the west side by a four-foot high chicken wire fence laced with branches from live oak trees and heavy shrubbery; large rocks made a natural barrier on the north and there was a wire gate through the trees on the south. Trees and brush also formed a natural barrier about the garden. Officer Wackerman testified that from the appearance of the enclosure, whoever had developed the garden intended that it be concealed from view. The garden was "pretty much" totally enclosed. The officers were able to see the marijuana plants through an opening in the trees and brush from their vantage point on the hill. Although the officers suspected the plants were marijuana when they first observed the garden, they were able to verify their suspicions only by examining the plants with the aid of binoculars. Subsequent investigation showed there were approximately 290 plants growing in the garden, from small plants one inch in height to full grown plants three feet in height.

The officers also observed a camp-type trailer some distance from the garden. The officers concealed themselves behind large rocks on the side of the mountain and observed two people—later identified as petitioners—walk into and tend the garden. It appeared to the officers that the people probably resided in the camp trailer. On May 9th the officers returned and continued their surveillance from their hiding place on the hillside for about two and one-half hours but saw no activity. On May 10th the officers returned to their hiding place where they again saw petitioners tending their garden. The officers made a video tape for positive identification. Subsequently, petitioners were arrested for cultivation of marijuana.

The officers testified that when they first observed the marijuana garden from the rocky knoll on the side of the hill they believed they were still on Mr. Perkins' property; however, it was later determined that they had trespassed 30 to 80 feet onto petitioners' property.[1]

---

[1]Although we will assume for the purpose of this opinion that the officers believed in good faith they were on Perkins' property, it is questionable whether their subjective belief was objectively reasonable. They testified that they had found a wire gate unattached to a fence at the bottom of the ravine so they stayed west of the ravine believing it to be on Perkins' property. However, the officers had already concluded from the information they had originally received from Officer Matlock, together with the assessor maps, that the ravine was located on petitioners' property. The maps also showed

## DISCUSSION

It has been said that when observations are made by an officer from a location to which he has not been invited the intrusion is an unlawful search unless made pursuant to a warrant (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33]). It also has been said that the Fourth Amendment does not prohibit trespasses, but only unreasonable searches and seizures (*People* v. *Terry* (1969) 70 Cal.2d 410, 427 [77 Cal.Rptr. 460, 454 P.2d 36], approved in *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104 [80 Cal.Rptr. 633, 458 P.2d 713]). ■ From these apparently conflicting statements, a fundamental point emerges: whether a search is unreasonable for Fourth Amendment purposes is not determined by strict property law concepts. Thus, a simple trespass does not necessarily foreclose a reasonable search, and the absence of a trespass does not save an otherwise unreasonable one (*People* v. *Fly* (1973) 34 Cal.App.3d 665 [110 Cal.Rptr. 158]).

Historically, the Fourth Amendment was held applicable only to lands within the curtilage, i.e., the enclosed or fenced land about the house. In *Hester* v. *United States* (1924) 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445], the United States Supreme Court speaking through Justice Holmes stated, ". . . the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." (265 U.S. at p. 59 [86 L.Ed. at p. 900].) Nonetheless, in *People* v. *Edwards, supra,* 71 Cal.2d 1096, the California Supreme Court abandoned the Hester approach by emphasizing what the United States Supreme Court had repeatedly recognized since *Hester*: " 'the security of one's privacy against arbitrary intrusion by the police' is 'at the core of the Fourth Amendment.' " (*People* v. *Edwards, supra,* 71 Cal.2d at p. 1103, quoting from *Berger* v. *New York* (1967) 388 U.S. 41, 53 [18 L.Ed.2d 1040, 1049, 87 S.Ct. 1873].) The *Edwards* court also followed the United States Supreme Court in holding that the Fourth Amendment protects people, not places, and that wherever an individual may harbor a reasonable expectation of privacy he is entitled to be free from unreasonable governmental intrusion (*People* v. *Edwards, supra*; *Terry* v.

"a finger of a small hilltop" as being on petitioners' property. Furthermore, the officers failed to ask Mr. Perkins to show them the precise location of the property line. Officer Wackerman acknowledged that if Mr. Perkins had been told the true purpose of the visit to his property, he probably would have consented to the officers' use of his property. Thus, at the very least it can be argued that the officers were negligent in believing they were still on Mr. Perkins' property when they observed the marijuana.

*Ohio* (1968) 392 U.S. 1, 9 [20 L.Ed.2d 889, 898-899, 88 S.Ct. 1868]; *Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507]).

■ In *Edwards, supra,* the court articulated the test for determining whether a warrantless search of open fields violates the Fourth Amendment: "[A] number of cases involving claims of unconstitutional searches or seizures in open fields . . . have stated their conclusions in terms of whether the place was a 'constitutionally protected area.' That phrase, however, does not serve as a solution in all cases involving such claims, and we believe that an appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (*People* v. *Edwards, supra,* 71 Cal.2d at p. 1100; see also *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112 [110 Cal.Rptr. 585]; *People* v. *Little* (1973) 33 Cal.App.3d 552 [109 Cal.Rptr. 196]; *People* v. *Sneed* (1973) 32 Cal.App.3d 535, 540 [108 Cal.Rptr. 146].) The test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 308-312 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *People* v. *Sneed, supra,* 32 Cal.App.3d 535, 540).

■ In the present case, petitioners clearly entertained a subjective expectation of privacy in the cultivation of their marijuana garden. Furthermore, under all of the circumstances it must be concluded that their expectation of privacy was objectively reasonable. The garden was located in an isolated narrow ravine on petitioners' foothill property which they apparently used as a residence, at least part of the time. The garden was protected by trees and a four-foot wire fence covered with brush and branches from oak trees. The officers acknowledged that the person who maintained the garden had intended to conceal it from view. There were no footpaths, roads or other indicia of common or public ownership or use in the immediate area where the officers located themselves (cf. *Dean* v. *Superior Court, supra,* 35 Cal.App.3d 112). Although the road onto petitioners' premises may have implied an invitation to visit the premises if it did not have a locked gate at its entrance, it cannot be deemed to have constituted an open invitation to police officers to explore the mountainous, rocky terrain not immediately adjacent to the road.

The fact that some of the marijuana plants were visible through an opening in the barrier about the garden from a vantage point on the hill

above the ravine does not negate petitioners' reasonable expectation of privacy. Absent adjacent trails, roadways or other common areas inviting access to the hill, a reasonable man would not anticipate the presence of uninvited persons at that location (cf. *People* v. *Bradley* (1969) 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129]; see also cases collected in *Lorenzana, supra,* 9 Cal.3d at p. 633, fn. 4). Furthermore, it would be unrealistic to assume that uninvited persons, such as hunters, cattlemen or hikers, who might find themselves on the hill adjacent to the ravine would be interested in examining the garden with the aid of binoculars to determine the species of the plants growing in the garden.

Nor does the absence of boundary fences or "no trespass" signs of itself negate petitioners' objective expectations of privacy. If petitioners had not attempted to conceal their garden by enclosing it with a fence and shrubbery in addition to the natural trees and rocks in the ravine, they might be deemed to have anticipated the presence of trespassers who would spot the plants and recognize them as marijuana. In this situation, petitioners' "internal, uncommunicated need for privacy" arising from their criminal activity would not qualify for Fourth Amendment protection (*Dean* v. *Superior Court, supra,* 35 Cal.App.3d 112, 117). However, since petitioners took reasonable steps to enclose their garden from the observation of others, they exhibited such a claim of privacy (*id.,* at pp. 117-118). That the enclosure did not totally conceal the plants does not foreclose an objective expectation of privacy; only reasonable efforts to secure privacy under all of the circumstances are required, otherwise, any discovery resulting from an officer's exploratory search would be lawful regardless of how flagrant or purposeful the trespass.

Even if it be assumed that petitioners should have anticipated the presence of occasional trespassers such as cattlemen, hunters and hikers on their unfenced land, there is no basis for holding that they should have anticipated the presence of police officers engaged in an exploratory search for marijuana. The concept of a *particularized* objective right to privacy has been recognized in many cases. For example, in *People* v. *Sneed, supra,* 32 Cal.App.3d at page 541, this court said: ". . . recent Supreme Court cases make clear that though a person may have consented to observations from some sources and by some persons and therefore cannot have a reasonable expectation of privacy as to those sources or persons, he does not thereby forego his Fourth Amendment protection as to intrusions from all sources and by all persons, and *particularly has not waived his right to privacy as to government agents.*" (Italics added.) In *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62,

486 P.2d 1262], it was held that by placing trash barrels on a public parkway, the defendants had not forsaken their reasonable expectation of privacy with respect to the contents of the barrels even though it was not unforeseen that trash collectors or vagrants or children might rummage through the trash barrels. (5 Cal.3d at p. 367.) Although a hotel guest should reasonably expect that maids, janitors and repairmen might enter his room in the performance of their duties, he would not reasonably anticipate that the police would enter to search. (*Stoner* v. *California* (1964) 376 U.S. 483, 489 [11 L.Ed.2d 856, 860-861, 84 S.Ct. 889]; *People* v. *McGrew* (1969) 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1], cert. den., 398 U.S. 909 [26 L.Ed.2d 67, 90 S.Ct. 1689], overruled on other grounds in *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097].) In *Katz* v. *United States, supra,* 389 U.S. 347, it is held that a person has a reasonable expectation of privacy in a public phone booth even though the public may observe the person in the booth making a call. Finally, in *People* v. *Triggs* (1973) 8 Cal.3d 884 [106 Cal.Rptr. 408, 506 P.2d 232], it is held that persons using public restrooms with open stalls "have no reason to suspect that a hidden agent of the state will observe them." (*Id.,* at p. 891.)

Several cases illustrate the proper analysis in determining whether the defendant had exhibited a reasonable expectation of privacy. In *People* v. *Little, supra,* 33 Cal.App.3d 552, sheriff's deputies were patroling about 2 a.m. in a remote area having a reputation as the site of various unlawful activities when they observed a flash of metal in their headlights from an unfenced, unposted area containing a large amount of junk and tin cans; the area was close to public rest stops along the road. In checking for possible unlawful activity, the officers observed the defendant asleep on the ground near his automobile, with pipe and a plastic bag containing marijuana lying in plain sight at his side. Defendant was arrested for possession of marijuana. At the hearing on the motion to suppress, it was established that the area where defendant had been sleeping was in fact private property, and that he had obtained written permission from the owner to be there. The sheriff's office had never requested permission to enter the property and none had been given or refused, although the owner had previously given written authorization to the county fire department to enter the property. The reviewing court upheld the defendant's arrest and the seizure of marijuana on the basis that any subjective expectation of privacy by the defendant was unreasonable under the circumstances. "Given a remote, wild-appearing area *adjacent to a public highway and public rest areas,* exhibiting no indicia of ownership such as the posting of signs, it could reasonably be anticipated

that other persons might consider the land to be public and enter without permission. In short, unrestrained public usage would be predicted from its physical state rather than reasonable privacy from its legal condition of private ownership." (Italics added, 33 Cal.App.3d at p. 556.)

In *Dean* v. *Superior Court, supra,* 35 Cal.App.3d 112, the defendant was indicted for possession of marijuana for sale as the result of an anonymous letter to the police alluding to the possibility of a commercial marijuana cultivation in an isolated area on the defendant's property in the Sierra foothills. A deputy flying over the area in a helicopter at an altitude of 400 to 500 feet was able to spot what he thought to be marijuana plants growing in a tree-surrounded plot half the size of a football field. The officers then attempted to locate the marijuana plot on foot by following a footpath mentioned in the letter. The officers located a path which exhibited no signs of private ownership or of exclusion of travelers and which led the officers to a point where the tops of marijuana plants were visible. The reviewing court upheld the two-phase search by reasoning that a defendant who plants a large tract of marijuana, although surrounded by a forest of trees, exhibits no reasonable expectation of privacy from overflight. The court distinguished *People* v. *Sneed, supra,* 32 Cal.App.3d 535, where a search by a helicopter hovering 20 feet over the defendant's back yard was held to be an illegal invasion of privacy. As to the ground search, the court emphasized that the officers' view of the marijuana plants was from a location on a "well worn" footpath which appeared to be open to the public. "When the police have a plain view of contraband from a portion of the premises as to which the occupant has exhibited no reasonable expectation of privacy, there is no search in a constitutional sense; . . ." (35 Cal.App.3d at p. 117.)

In *People* v. *Sneed, supra,* 32 Cal.App.3d 535, this court held that the trial court should have suppressed evidence of two marijuana plants growing in a corral approximately 125 feet from the back of the defendant's house because the plants were first observed from a noisy police helicopter flying only 20 feet above the yard. The invasion was held to be an unreasonable governmental intrusion into the serenity and privacy of the yard. However, we pointed out that if the police observation of the marijuana plants had been made from a consenting neighbor's property (see *Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 309-311 [102 Cal.Rptr. 161, 497 P.2d 505]) or if the viewing had been from a position where tradesmen, deliverymen and members of the public had a right to be (see *People* v. *Bradley, supra,* 1 Cal.3d 80), there

would have been no unlawful invasion of the defendant's right of privacy (32 Cal.App.3d at p. 541).[2]

Having determined that petitioners had a reasonable expectation of privacy as to their marijuana garden, we must decide whether their expectation of privacy was violated by an unreasonable police intrusion. In *Lorenzana* v. *Superior Court, supra,* 9 Cal.3d 626, the Supreme Court seems to equate unreasonableness with *any* police intrusion into a citizen's right of privacy. It says, ·"We now recognize the constitutional encasement which renders *inviolable* the individual's reasonable expectation of privacy; any governmental intrusion into that privacy is an 'unreasonable search' within the meaning of the Fourth Amendment, whether that intrusion be the traditional physical search [citation] or a surreptitious auditory invasion [citations] or indeed visual intrusion [citations]." (Italics added, 9 Cal.3d at p. 639.) The holding in *Lorenzana* is in keeping with repeated pronouncements that searches conducted without a warrant are per se unreasonable unless they come within a few "specifically established and well-delineated exceptions." (*Katz* v. *United States, supra,* 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; *People* v. *Edwards, supra,* 71 Cal.2d at p. 1105.)

In seeking a decision that the officers reasonably intruded into petitioners' privacy, the People ask us to carve out another exception to the warrant requirement on the basis of the officers' mistaken but good faith belief that they were on Mr. Perkins' property when they discovered the marijuana garden. The People seek to support their argument by the cases which hold that a search is not unreasonable if made with the consent of a third party whom the police reasonably and in good faith believe has authority to consent to their search (*People* v. *Gorg* (1955) 45 Cal.2d 776, 783 [291 P.2d 469]; *People* v. *Smith* (1966) 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Hill* (1968) 69 Cal.2d 550, 555 [72 Cal.Rptr. 641, 446 P.2d 521]; *People* v. *Carr* (1972) 8 Cal.3d 287, 298 [104 Cal.Rptr. 705, 502 P.2d 513]). The defect in the analogy to the

---

[2]Respondent contends that petitioners' garden was visible from Perkins' property. The contention is based on Sergeant Richards' testimony at the superior court suppression hearing that after the preliminary hearing the officers returned to Perkins' property to fix the exact location of his east boundary line and found "one spot" on a hillside where they could observe "one corner" of the garden. However, this testimony is of no consequence since Richards admitted that "the garden had been altered" either by the officers or petitioners after their arrest and before the officers had returned following the preliminary hearing. The same conclusion is reached with respect to Richards' suggestion that the garden could have been observed by anyone who "climbed to sugar pines" on Perkins' property, whatever he meant by this statement. Twenty-twenty hindsight vision sheds little light on the issues before this court.

apparent authority cases, however, is that in those cases some individual with ostensible control over the defendant's property expressly consented to the officer's presence, whereas in the present case no one consented to the officers being on petitioners' property. The United States Supreme Court has spoken on the danger of using the officer's good faith in determining whether an unlawful search has occurred. "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." (*Beck* v. *Ohio* (1964) 379 U.S. 89 at p. 97 [13 L.Ed.2d 142, at p. 148, 85 S.Ct. 223].) ■ Moreover, even an objectively reasonable good faith belief by the officers of their right to search will not justify an otherwise unlawful search: "Nor is there any substance to the claim that the search was reasonable because the police, relying upon the night clerk's expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search [of defendant's hotel room]. Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.' " (*Stoner* v. *California* (1964) 376 U.S. 483, 488 [11 L.Ed.2d 856, 860, 84 S.Ct. 889].) ■ By analogy, these principles govern the case at hand. Even assuming a reasonable good faith belief by the officers that they had a lawful right to be where they first observed the marijuana garden, their trespass must be deemed to constitute an unreasonable intrusion into petitioners' privacy. No other result will preserve the integrity of the Fourth Amendment.

The People also argue that where officers in good faith try to stay off the defendants' property in conducting their surveillance, a mere inadvertent trespass should not invalidate an otherwise lawful activity, particularly when the surveillance is conducted in open areas where boundary lines are difficult to locate. We reject such a simplistic approach. As we have explained, the inquiry is not whether the officers have violated a particular boundary line in their searching but whether they have invaded the reasonable expectation of privacy exhibited by defendants. *The expectation of privacy defines the parameters of the right to search.* Thus, while the possessor of unfenced rural property should anticipate the presence of occasional trespassers, the lack of boundary fences alone does not foreclose a reasonable expectation of privacy as to a particular area on the land such as the ravine and enclosed garden in the present case. We perceive no difference between fenced land on the one hand and open land having a particular enclosed area on the other hand, insofar as the Fourth Amendment is concerned. (*People* v. *Edwards*,

*supra,* 71 Cal.2d 1096; *People* v. *Little, supra,* 33 Cal.App.3d 552; *People* v. *Fly, supra,* 34 Cal.App.3d 665.)

In sum, considering the totality of the circumstances, we conclude that the officers unreasonably invaded petitioners' reasonable expectation of privacy as to their garden. The officers were not presented with an emergency or exigent circumstances that would have justified their acting without a warrant, nor do the facts bring the case within any of the well-delineated limited exceptions to the warrant requirement. By electing to engage in a surreptitious surveillance from the adjoining owner's property rather than seeking a search warrant, the officers assumed the risk of intruding into petitioners' constitutionally protected area of privacy. Having done so, the search was illegal regardless of the officers' good faith.

It is ordered that a writ of mandamus issue directing the respondent court to suppress the marijuana evidence.

Brown (G. A.), P. J., and Hopper, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied May 24, 1979. Clark, J., was of the opinion that the petition should be granted.