[No. E026018. Fourth Dist., Div. Two. June 23, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD T. CHANNING, Defendant and Respondent.

## COUNSEL

Dennis L. Stout, District Attorney, Grover D. Merritt, Lead Deputy District Attorney, Gina L. Kershaw and Mark A. Vos, Deputy District Attorneys, for Plaintiff and Appellant.

Diane Nichols, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—The People appeal the trial court's grant of defendant's motion under Penal Code[1] section 1538.5 to suppress the evidence of marijuana being grown under a green tarp near his trailer on his property.[2] Acting on a tip from a confidential informant, Officer John Wickum of the San Bernardino County Sheriff's Department observed marijuana plants being grown under a green tarp behind defendant's trailer. The People

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] To be precise, the People appeal from the trial court's order denying the People's motion under section 871.5 to reinstate the charges against defendant.

contend that the evidence of the officer's observation should not have been suppressed because the officer made his observation while standing in the so-called open fields area. (*Hester v. United States* (1924) 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898] (hereafter, *Hester*).) As we shall explain below, we agree with the People and reverse.

## DISCUSSION

■ The principles governing our review of the trial court's ruling on a motion to suppress evidence in a criminal proceeding are well settled: "In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to independent review." (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

### A. Historical Facts[3]

The following facts were determined by the trial court. Sometime prior to June 23, 1997, a confidential informant provided information to the San Bernardino County Sheriff's Department that marijuana was being cultivated at a remote mountain location known as the Bowen Ranch. On June 23, 1997, Officer John Wickum, a trained narcotics officer, decided to conduct an investigation and went out to the Bowen Ranch.

The Bowen Ranch is located in a remote mountainous area. The area consists of hills, ravines, trees, rocks, and dirt roads. Officer Wickum first approached the property through a dirt road, parked his vehicle, and continued to travel towards the Bowen Ranch on foot. The officer had to travel through rugged mountainous terrain as there were no roads leading directly up to the Bowen Ranch. The only structure he observed in the vicinity of the Bowen Ranch was a shack or a shed.

---

[3]The statement of facts is based upon the clerk's transcript in a prior appeal. (*People v. Channing* (Mar. 4, 1999, E022675) [nonpub. opn.].) In the order dated December 9, 1999, we have taken judicial notice of the record in the prior appeal.

As Officer Wickum approached the property, he saw several travel trailers located on the property. When he approached to within 20 or 30 feet of the trailers, Officer Wickum noticed a green tarp directly to the rear of one of the trailers. Based upon his training in the field of narcotics, Officer Wickum determined that multiple marijuana plants were being cultivated underneath the tarp. Officer Wickum then went back to his vehicle, drove around to the front of the trailer and contacted defendant who was standing out front. Officer Wickum identified himself as a police officer and told defendant that he believed marijuana was being grown under the green tarp behind the trailer. Defendant identified himself as Rich who lived in the trailer and stated that he had a constitutional right to grow marijuana. Officer Wickum then asked defendant whether he could walk through the property to make sure no one else was there, and defendant agreed. As Officer Wickum walked through the property, he noticed more marijuana plants being grown in planter boxes located in the front of the trailer. Eventually a search warrant for the property was obtained. In the course of the ensuing search, marijuana plants were found under the green tarp and in front of defendant's trailer.

At the hearing on the motion to suppress, the parties stipulated that the area observed by the officer was inside the curtilage, that the officer trespassed into defendant's property by about 200 or 300 feet, and that the officer had to traverse through a lot of trees and rocks to get to his observation point. The parties stipulated further that Officer Wickum's observation point was outside the curtilage.

The trial court granted the suppression motion and, when the People were unable to proceed without the suppressed evidence, dismissed the charges against defendant. The People appealed the grant of defendant's motion to suppress by filing a motion under section 871.5 to reinstate the charges.[4] The trial court refused to hear the motion on the ground that an order granting the suppression motion could not be appealed under section 871.5. In an unpublished opinion, *People v. Channing, supra*, E022675, we concluded that the People could file a motion under section 871.5 to appeal an adverse ruling on a suppression motion. On remand, the trial court denied the People's motion to reinstate the charges. The People once again appealed.

B. *Analysis*

The People contend that Officer Wickum's initial observation of the marijuana plants under the green tarp was not a warrantless search

---

[4]Section 871.5, subdivision (a), provides as follows: "When an action is dismissed by a magistrate . . . the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate."

prohibited by the Fourth Amendment of the federal Constitution because the officer made his observation from an open field area. The People argue that law enforcement is not constitutionally prohibited from making an observation from a vantage point outside the curtilage, even if the item observed is located inside the curtilage. (*United States v. Dunn* (1987) 480 U.S. 294 [107 S.Ct. 1134, 94 L.Ed.2d 326] (hereafter, *Dunn*); *Oliver v. United States* (1984) 466 U.S. 170 [104 S.Ct. 1735, 80 L.Ed.2d 214] (hereafter, *Oliver*).)

Defendant responds that Officer Wickum's observation amounted to a search because the item observed was inside the curtilage, an area protected by the Fourth Amendment. Since it is undisputed that Officer Wickum trespassed on defendant's property to get to his observation point, defendant argues that the People are precluded from invoking the plain view doctrine because the officer did not have a lawful right to be at his observation point. Defendant also argues that he had a reasonable expectation of privacy in the area under the green tarp because he intentionally placed the marijuana plants in a remote geographical area that is not, as a matter of course, accessed by members of the general public or law enforcement officers.

■ " 'The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." ' " (*People v. Freeman* (1990) 219 Cal.App.3d 894, 900 [268 Cal.Rptr. 603].) The inquiry is twofold: " '[f]irst, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?' " (*Ibid.*) ■ At issue in this case is the reasonableness of defendant's expectation of privacy in the area under the green tarp located outside defendant's trailer and inside the curtilage.

■ In *Oliver*, the United States Supreme Court revived the open fields doctrine first announced by the court in *Hester*. The *Oliver* court held that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." (*Oliver*, *supra*, 466 U.S. at p. 178 [104 S.Ct. at p. 1741].) A subjective expectation of privacy in an open fields area is not an expectation that society is willing to recognize as reasonable. (*Id.* at p. 179 [104 S.Ct. at pp. 1741-1742].) Law enforcement may conduct warrantless observations from open fields; the fact that the observing officer trespasses to get to his or her observation point does not transmute the observation into an unconstitutional search. (*Id.* at p. 183 [104 S.Ct. at p. 1744].) In defining "open fields area," the court noted that the term "may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." (*Id.* at p. 180, fn. 11 [104

S.Ct. at p. 1742].) A thickly wooded area, for example, may be considered an open field for the purposes of the Fourth Amendment analysis. (*Ibid.*)

In *Dunn*, the United States Supreme Court expanded the open fields doctrine. There, the court held that police officers may observe without a warrant items located inside constitutionally protected areas as long as the observation point itself is outside the curtilage, in an open field area not protected by the Fourth Amendment. (*Dunn, supra*, 480 U.S. at p. 304 [107 S.Ct. at p. 1141].) The court concluded that the officers in *Dunn* did not conduct an illegal warrantless search when they stood in an open field outside the curtilage and looked into the open door of a barn located inside the curtilage. (*Ibid.*)

Similarly, in *California v. Ciraolo* (1986) 476 U.S. 207 [106 S.Ct. 1809, 90 L.Ed.2d 210] (hereafter *Ciraolo*), the high court held that the fact that the area observed was inside the curtilage did not bar all police observation. (*Id.* at p. 213 [106 S.Ct. at pp. 1812-1813].) The court further held that warrantless observation of the curtilage area from an aircraft located in public navigable airspace was constitutionally permissible. (*Id.* at pp. 213-214 [106 S.Ct. at p. 1813].)

In this case, the parties stipulated in the trial court that Officer Wickum made his observations of the marijuana plants under the green tarp from the vantage point located outside the curtilage. Any observation made by the officer from the open fields area of the items located inside the curtilage was not a warrantless search in violation of the Fourth Amendment.[5] (*Dunn, supra*, 480 U.S. at p. 304 [107 S.Ct. at p. 1141]; see also *People v. Freeman, supra*, 219 Cal.App.3d at p. 902.)

Defendant raises several arguments in support of his position that Officer Wickum's observation was a search. We shall address each of these contentions separately.

Citing *Ciraolo, supra*, 476 U.S. at page 213 [106 S.Ct. at pages 1812-1813], defendant first argues that the officer could not have made a warrantless observation from a vantage point where he did not have a lawful right to be. Since the parties stipulated that Officer Wickum trespassed in order to

---

[5]Defendant also argues that even if Officer Wickum could have made an observation from a point outside the curtilage without violating the Fourth Amendment, his observation was still a warrantless search because he actually made the observation from *inside* the curtilage. We summarily reject this argument because it is contrary to the stipulation entered into by the parties in the trial court concerning the respective position of the officer and the marijuana plants. We also reject defendant's claim that the trial court declined to accept the stipulation because this claim is contrary to the record.

get to his observation point, defendant contends that the officer did not have any right to be at the place of the observation and that his observation was therefore a search. We disagree. We find nothing in *Ciraolo* that would render the officer's observation unconstitutional simply because he or she trespassed to get to the observation point. On the contrary, *Dunn* (which was decided a year after *Ciraolo*) cited *Ciraolo* with approval and held that "there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." (*Dunn, supra,* 480 U.S. at p. 304 [107 S.Ct. at p. 1141]; *People v. Freeman, supra,* 219 Cal.App.3d at p. 903.)

Defendant next argues that he had a reasonable expectation of privacy because his trailer was deliberately placed in a remote area that is naturally protected from outside observation by rocky cliffs on one side and inclines, ravines, washes, boulders, and high scrub on the other two sides. He also points to his efforts to screen three outdoor bathtubs (where marijuana was being grown) from outside view as evidence that his expectation of privacy was reasonable.

In our view, neither of these arguments is feasible in light of *Oliver* and *Dunn.* In *Oliver,* the United States Supreme Court was quite clear in defining the term "open fields" and stating that an area so designated does not have to be either open or a field, insofar as these terms are commonly understood. (*Oliver, supra,* 466 U.S. at p. 180, fn. 11 [104 S.Ct. at p. 1742].) The court deemed an open field all areas except the home itself and curtilage (the land immediately surrounding and associated with the home). (*Ibid.,* see also 2 LaFave et al., Criminal Procedure (2d ed. 1999) Arrest, Search and Seizure, § 3.2(d), p. 67.) Furthermore, the following comments by the *Dunn* court do not leave any room for the courts to consider the nature of the area observed or the reasonableness of defendant's efforts to shield the protected area from observation: "It follows that no constitutional violation occurred here when the officers crossed over respondent's ranch-style perimeter fence, and over several similarly constructed interior fences, prior to stopping at the locked front gate of the barn. . . . Once at their vantage point, they merely stood, outside the curtilage of the house and in the open fields upon which the barn was constructed, and peered into the barn's open front. And, standing as they were in the open fields, the Constitution did not forbid them to observe the phenylacetone laboratory located in respondent's barn." (*Dunn, supra,* 480 U.S. at p. 304 [107 S.Ct. at p. 1141].)

Next, defendant seeks to distinguish *Dunn* and *Oliver* on the ground that neither of those cases involved observations of items located inside constitutionally protected areas. Defendant is wrong. Although the court in *Dunn*

initially concluded that the area observed did not meet the criteria of a curtilage, it then went on to state that even if the area observed was inside the curtilage, the observation was not unconstitutional as long as the observation point was outside the curtilage. (*Dunn, supra*, 480 U.S. at p. 304 [107 S.Ct. at p. 1141].)

Defendant also relies on several California decisions holding that the observation was an unconstitutional search when the observation point was located in the area the officers had no lawful right to be in. (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33] (hereafter, *Lorenzana*); *Phelan v. Superior Court* (1979) 90 Cal.App.3d 1005 [153 Cal.Rptr. 738] (hereafter, *Phelan*).)

*Lorenzana* is distinguishable from the case at bar. In *Lorenzana*, the California Supreme Court suppressed the evidence obtained as a result of the officer's warrantless observation into a closed window of the defendant's house; the observation was made through a small gap in the window's drawn shades. (*Lorenzana, supra*, 9 Cal.3d at p. 630.) Relying on the evidence that the officer trespassed to get to his observation point and that the observation point was in the area to which the general public had not been implicitly invited by the defendant, the court found that the officer made his observation from a point he did not have a lawful right to be. (*Id.* at pp. 635-636.)

On the other hand, in this case the parties stipulated that Officer Wickum made his observation from outside the curtilage, an area deemed by the United States Supreme Court to be an open field for Fourth Amendment purposes. (*Oliver, supra*, 466 U.S. at p. 180 [104 S.Ct. at p. 1742].) A warrantless observation made by law enforcement from an open field enjoys the same constitutional protection as the one made from a public place. (*Dunn, supra*, 480 U.S. at p. 304 [107 S.Ct. at p. 1141].) Thus, Officer Wickum made his observation from a vantage point where he had a legal right to be.

Moreover, defendant cannot rely on *Phelan* because it is in direct conflict with *Oliver*. In *Phelan*, the Fifth District rejected on independent state law grounds the open fields doctrine in concluding that the officer's warrantless observation of a marijuana garden located in a remote mountain area of the defendant's property some distance away from the defendant's trailer violated the defendant's reasonable expectation of privacy. The court reasoned that the defendant's intentional placement of the marijuana garden in a remote area naturally protected from outside view demonstrated the reasonableness of his expectation of privacy. (*Phelan, supra*, 90 Cal.App.3d at p. 1011.)

However, *Oliver* held that any area outside the home and the land immediately associated with the home is considered an open field; a criminal defendant does not enjoy a reasonable expectation of privacy in an open field. (*Oliver, supra*, 466 U.S. at p. 180 [104 S.Ct. at p. 1742].) Furthermore, *Oliver* expressly repudiated the rationale on which the *Phelan* court relied in finding the defendant's expectation of privacy reasonable. Under *Oliver*, intentional placement of marijuana in a secluded location of an open field area does not demonstrate the reasonableness of a criminal defendant's expectation of privacy. (*Id.* at p. 182 [142 S.Ct. at p. 1743].)

To the extent *Phelan* is in conflict with *Oliver*, *Oliver* is controlling. While at the time *Phelan* was decided California courts could provide greater protection against unreasonable searches and seizures than the Fourth Amendment, Proposition 8 passed by the California voters during the 1982 California primary election now requires California courts to follow United States Supreme Court decisions on questions of search and seizure. (*In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].)

## DISPOSITION

The trial court's orders suppressing the evidence and denying the People's motion under section 871.5 are reversed. The court is directed to reinstate the felony complaint against defendant. The court is further directed to resume the preliminary hearing at the point it was previously terminated by the dismissal of the charges. (§ 871.5, subd. (e); *People v. Childs* (1991) 226 Cal.App.3d 1397, 1408 [277 Cal.Rptr. 456]; *Chism v. Superior Court* (1981) 123 Cal.App.3d 1053, 1060 [176 Cal.Rptr. 909]; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989 & 1999 supp.) Proceedings Before Trial, § 1991.)

Hollenhorst, Acting P. J., and Richli, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 18, 2000. Mosk, J., was of the opinion that the petition should be granted.