[No. D037859. Fourth Dist., Div. One. Apr. 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
LORENZO SHAW, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Elizabeth A. Hartwig and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, J.**—Paul Simon wrote that "one man's ceiling is another man's floor."[2] This truism of apartment dwelling also means that what might be one person's curtilage,[3] in the context of a private single occupancy residence, becomes less subject to privacy expectations in the context of the grounds of a multi-unit apartment complex, as in this case.

It is upon this lowered expectation of privacy in a common area, as opposed to a private area, that we distinguish the case before us from *People*

[2]Paul Simon (1973) There Goes Rhymin' Simon, "One Man's Ceiling Is Another Man's Floor."

[3]"[T]he curtilage is the area which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' [citation] and therefore has been considered part of home itself for Fourth Amendment purposes." (*Oliver v. United States* (1984) 466 U.S. 170, 180 [104 S.Ct. 1735, 1742, 80 L.Ed.2d 214].)

*v. Camacho* (2000) 23 Cal.4th 824 [98 Cal.Rptr.2d 232, 3 P.3d 878] (*Camacho*), which held an intrusion by police into the curtilage of a residence[4] violated the occupant's legitimate privacy expectations.

Following denial of his motion to suppress evidence, which was made first at the preliminary hearing and renewed in the superior court, Lorenzo Shaw was convicted by a jury of sale of cocaine base. Shaw argues on appeal the search which uncovered the drug was unlawful, his motion for a mistrial based on a witness's statement should have been granted, and it was error to instruct the jury pursuant to CALJIC No. 17.41.1. We find Shaw's expectation of privacy in his discovered drug cache was not reasonable, and his other assertions are without merit, and we thus affirm the judgment.

BACKGROUND[5]

4779 Auburn Drive is a four-unit apartment building, concerning which police had received complaints of narcotics activity.[6] From late in the evening of November 8, 2000, on into the early morning hours of November 9, Police Officers Lynn and Newquist, with permission from the property owner, were standing behind a fence at a residence on Wrightman, directly behind the Auburn Drive complex. From their position behind the fence the police officers saw several persons go to apartment 3[7] at Auburn Drive and leave after a short time. The officers also twice saw Shaw go into the backyard of the complex, walk to the backyard area, reach down to the ground near the fence, and then return to the apartment.

After Shaw left the backyard the second time, Lynn and Newquist determined to obtain backup officers and contact Shaw. Officer Lynn entered the backyard of the apartment through a break in the fencing, while Newquist went around to the front. Newquist later entered the backyard and lifted a piece of four-by-four wood from the ground, and retrieved a bag containing

---

[4]In *Camacho*, the officers "walked into the side yard of the [defendant's] single-story house" from which position they observed narcotics activity. (*Camacho, supra*, 23 Cal.4th at p. 828.)

[5]The facts, relevant to the first and central argument on this appeal, are taken from the preliminary hearing testimony, following which the motion to suppress was first made and denied. The superior court hearing is to review the evidentiary sufficiency of the earlier motion. (Pen. Code, § 1538.5, subd. (i).) The factual background necessary to address the second assertion of error will be later set out.

[6]The midcity patrol area is the area of highest narcotics activity in San Diego, and the complex at 4779 Auburn Drive was known to police as "the number one address in mid city" for narcotics offenses, particularly involving rock cocaine.

[7]The police report initially prepared incorrectly listed the apartment being watched as apartment 4. This confusion would resurface at trial, as is discussed *post* in connection with the claim of error as to a motion for mistrial.

several pieces of rock cocaine from a hole in the ground underneath the piece of wood.

After referring to the facts of *Camacho, supra,* 23 Cal.4th 824, the magistrate noted this case was factually different in that the observations had been made from a lawful vantage point, the yard was an area to which multiple occupants of the apartment complex had access, and that in these circumstances Shaw's reasonable expectation of privacy in the hole in the ground in the yard was "really nonexistent."[8]

At a renewed motion to suppress in the superior court prior to trial, the judge hearing the renewed suppression motion found that substantial evidence supported the magistrate's ruling,[9] and that there had "been no Fourth Amendment violation here with respect to the [drugs found in the yard]."

## PROCEDURE

By information filed December 27, 2000, the District Attorney of San Diego County accused Shaw of possessing cocaine base for sale. Jury trial commenced March 12, 2001, and on March 15, 2001, the jury found Shaw guilty as charged. On April 12, 2001, Shaw was sentenced to state prison, and he thereafter filed a timely notice of appeal.

## STANDARD OF REVIEW

As to the motion to suppress, the applicable principles have been recently restated: " ' "An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one

---

[8]While declining to suppress evidence of the drugs in the yard, the magistrate did order suppressed observations that had been made by the officers after they entered Shaw's apartment.

[9]Appellant repeatedly suggests that the superior court judge felt bound by the magistrate's *legal,* as well as factual, findings, but we do not so read the comments made by the superior court judge hearing the renewed motion.

of law, . . . is also subject to independent review." ' [Citation.]"[10] (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3] (*Ayala*).)

As to the motion for mistrial, the same court held that "we review a ruling on a motion for mistrial for an abuse of discretion, and such a motion should be granted only when a party's chances of receiving a fair trial have been irreparably damaged." (*Ayala, supra*, 23 Cal.4th at p. 283.)

Finally, assertions of instructional error are reviewed de novo. "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that, we believe, is however predominantly legal. As such, it should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

With these standards in mind, we proceed to Shaw's assertions of error.

## DISCUSSION

## I

### *The Motion to Suppress*

The cases cited by Shaw in support of the proposition he had a reasonable expectation of privacy in the hole in the ground in the backyard of the apartment complex all involve private residences, rather than apartment complexes in which the yard areas are common ground accessible to all occupants, as here. For these reasons, we find Shaw's assertion of legal error on the suppression motion unpersuasive.

First, the propriety of the initial observations is clear: "[I]n this case the [officers] made [their] observation[s] from outside the curtilage, an area deemed by the United States Supreme Court to be an open field for Fourth Amendment purposes. (*Oliver v. United States, supra*, 466 U.S. at p. 180 [104 S.Ct. at p. 1742].) A warrantless observation made by law enforcement from an open field enjoys the same constitutional protection as the one made from a public place. ([*United States v.*] *Dunn* [(1987)] 480 U.S. [294,] 304 [107 S.Ct. 1134, 1141, 94 L.Ed.2d 326].) Thus, [the officers] made [their] observation[s] from a vantage point where [they] had a legal right to be." (*People v. Channing* (2000) 81 Cal.App.4th 985, 993 [97 Cal.Rptr.2d 405].)

---

[10]As we have noted earlier, it was the trial court's initial task in the case to apply the substantial evidence standard to the magistrate's factual findings, as is mandated by Penal Code section 1538.5, subdivision (i).

The central point here is whether, on the basis of these lawful observations, entry into the backyard of the complex and recovery of the drugs beneath the piece of wood violated a privacy interest of Shaw's which society is prepared to recognize as reasonable. ■ In *Katz v. United States* (1967) 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576], as articulated in Justice Harlan's concurring opinion, the test for Fourth Amendment purposes has two prongs: first, a person must demonstrate an actual, subjective expectation of privacy in that which is searched and second, that actual expectation must be one society recognizes to be reasonable. (*Id.* at p. 361 [88 S.Ct. at pp. 516-517] (conc. opn. of Harlan, J.).)

With respect to activities in private residences, privacy expectations are generally reasonable. As another court has noted, "the [United States] Supreme Court has restated the particular deference accorded the home characterizing as a basic 'Fourth Amendment principle' the notion that 'private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable.' (*United States* v. *Karo* (1984) 468 U.S. 705, 714 [82 L.Ed.2d 530, 541, 104 S.Ct. 3296].)" (*People v. Deutsch* (1996) 44 Cal.App.4th 1224, 1229 [52 Cal.Rptr.2d 366]; see also *Ayala, supra,* 23 Cal.4th at p. 255.)

For our purposes, however, another rule applies. As the *Deutsch* court put it, "[i]nformation or activities which are exposed to public view cannot be characterized as something in which a person has a subjective expectation of privacy, nor can they fulfill the second prong of *Katz*—as being that which society reasonably expects will remain private." (*People v. Deutsch, supra,* 44 Cal.App.4th at p. 1229.) ■ Here, Shaw's going out into the common area of an apartment complex and placing drugs in a hole in the ground is simply not the sort of activity reasonably tied to any proper expectation of privacy. Discarding garbage by putting it out on a public street renounces an expectation of privacy in the contents of a garbage bin. (*California v. Greenwood* (1988) 486 U.S. 35, 40 [108 S.Ct. 1625, 1628-1629, 100 L.Ed.2d 30].) In like manner, putting drugs in a hole in the ground in the common area of an apartment complex, which is itself a notorious center for drug dealing, is an effective renunciation of any reasonable expectation of privacy.[11]

The dispositive factor here is that Shaw was not in exclusive control of the area in which he secreted the narcotics. "One of the main rights attaching to

[11]In discussing the difference between a privacy expectation in a paper bag as opposed to a locked suitcase, another court noted that "[s]uitcases are not typically strewn about the landscape. Paper bags are often casually discarded. Both types of containers are equally protected by the Fourth Amendment when used as receptacles for private materials. Neither is

property is the right to exclude others, . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." (*Rakas v. Illinois* (1978) 439 U.S. 128, 143, fn. 12 [99 S.Ct. 421, 431, 58 L.Ed.2d 387].) Shaw, who had the burden on the issue,[12] introduced no evidence of any right to exclude others from the common area of the apartment complex.

As the prosecutor emphasized at the suppression hearing during the preliminary examination, the fact Shaw lived in an apartment complex diminished the reasonableness of his expectation that his activities in the common back yard might remain private. The magistrate found that "for [Shaw] to assert an expectation of privacy in a hole with a piece of wood over it next to a fence—is—is really nonexistent . . . ." Under the applicable rules for review, the record substantially supports the conclusion of the lower court, and we thus affirm the denial of Shaw's motions to suppress evidence.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 17, 2002. Brown, J., did not participate therein.

---

protected when no reasonable expectation of privacy is manifested. The nature of the container is one factor which determines whether such an expectation has been manifested." (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1046 [8 Cal.Rptr.2d 221], italics omitted.) A hole in the ground is rather more on the discarded bag end, rather than the locked suitcase end, of the scale of reasonable privacy expectations in containers. See also *People v. Roybal* (1998) 19 Cal.4th 481, 507 [19 Cal.4th 1231a, 79 Cal.Rptr.2d 487, 966 P.2d 521]: "[T]he bags here were the type given to customers to hold retail purchases; they were simply rolled up around stolen jewelry and placed in a wall adjacent to neighboring properties, where they were visible and accessible to passersby. In effect, defendant had abandoned the items."

[12] See, e.g., *People v. Moreno* (1992) 2 Cal.App.4th 577, 582 [3 Cal.Rptr.2d 66].)

*See footnote 1, *ante*, page 833.